This is an action of ejectment, brought to recover a portion of the right of way claimed by the plaintiff, lying upon Tulare Avenue, a highway in Fresno County. Verdict and judgment went for the plaintiff in the court below, and this appeal is from the judgment and from an order denying defendants' motion for a new trial. The appellants make two points on the appeal: 1. That the action of ejectment is not maintainable for the sort of injury *Page 203 
here involved; and 2. That the action of ejectment could not be maintained in this case because of the consent or acquiescence of respondent in the construction of the San Joaquin Valley road, the predecessor in interest of defendants and appellants, over a portion of the right of way in question.
It is not questioned on the part of the appellants that there is a class of cases wherein an action will lie for the recovery of a right of way, but it is claimed that in all such cases there is an exclusive right of possession in the body politic, corporation, or person seeking to enforce such a remedy; as, for instance, a city or other municipal body may maintain ejectment for the recovery of a street or park, and a county, to recover a public road or highway. Such were the cases of Visalia v. Jacob,65 Cal. 434,[1] and San Francisco v. Grote, 120 Cal. 59.[2] It has also been held that ejectment would lie to recover possession of the right of way, or any portion thereof, granted by Congress to the Central Pacific Railroad Company. (See Southern Pacific Co.v. Burr, 86 Cal. 279, and Southern Pacific Co. v. Hyatt, 132 Cal. 240. ) The streets and parks in such cases belong to the public, and the public is entitled to the exclusive possession and use of the same, and the municipality or county, as the case may be, is simply the agent of the public, and hence is entitled to bring an action to recover possession, in case the public has been ousted of the same. So in reference to the Congressional grant of right of way to the Pacific Railroad Company; the grant in that case conveys exclusive right of possession to all within the boundaries of the grant, for the purposes of constructing and operating the railroad in question. In this case, however, it appears, by the admitted facts, that the plaintiff's right is based upon a franchise, granted by the board of supervisors of the county of Fresno, to operate and maintain a railroad along and over Tulare Avenue, and that said avenue is a public highway, in the county of Fresno.
In San Francisco v. Grote, 120 Cal. 59[2], the court says: "It may be conceded that a naked right of way, an easement in its simplest form, a mere right to pass over the lands of another, is a thing so intangible and unsubstantial as to be insufficient to support an action of ejectment. But *Page 204 
here the right of the city goes far beyond that. The city has the right of the exclusive possession, a right to disturb the soil, a right to grade and otherwise improve the street in many ways. In other words, more than a mere right to the use of a street passes to the public by dedication; in addition to the right of the use, there passes such an interest in the land as is necessary for the enjoyment of that use by the public." And inWood v. Truckee Turnpike Co., 24 Cal. 474, the court says: "But it is well settled that an action of ejectment will not lie in favor of a party to try his right to enjoy an easement; nor will it lie against one claiming an easement in land to try his right to enjoy it. And the reason is obvious — the very subject-matter of controversy is incorporeal. It is for that reason that an easement `lyeth in grant, and not in livery.' It is for that reason that the owner of a way cannot be disseised, or otherwise ousted of it; he can only be `disturbed' or `obstructed' in its enjoyment, and for such injury the remedy is by action on the case at common law, or by bill in equity." (Citing a long list of authorities.) In City of Racine v. Crotsenberg, 61 Wis. 481,[1] it is said: "No one will contend that an action of ejectment will lie to recover a simple right of way. Such an easement is incorporeal in its nature, and ejectment lies only to recover things corporeal which may be the subjects of seisin, entry, and possession. There can be no seisin of an incorporeal hereditament, and it cannot be the subject of entry or possession. It `lyeth in grant and not in livery.'" The same rule was held in Fritsche v. Fritsche, 77 Wis. 270, where it is said: "It is well settled, both on principle and by authority, that the action cannot be maintained for such purpose." That was ejectment, also, to recover a private right of way claimed by the plaintiff as against the defendant, who had obstructed the same at some point. The right to a fee and the right to an easement in the same estate are rights independent of each other, and may subsist together when vested in different persons. Each can maintain an action to vindicate and establish his right. The owner of the fee is the one entitled to the exclusive possession, and may protect and enforce his right by ejectment; but for the disturbance or obstruction of an easement or franchise, ejectment *Page 205 
is not the proper remedy. In addition to the cases quoted, see, further, Child v. Chappell, 9 N.Y. 246; Washburn on Easements, 568; Taylor v. Gladwin, 40 Mich. 232; Smith v. Wiggin,48 N.H. 105; 2 Bacon's Abridgments, 417; Adams on Ejectment, 16; Runnington on Ejectment, 25.
The evidence shows such an acquiescence or consent in the use of the right of way by the San Joaquin Valley Railroad Company, predecessor in interest of the defendants, as would defeat a recovery in this action, even if ejectment were the proper remedy. In the evidence produced on behalf of the respondent, the following occurs, in the testimony of Mr. J.R. White, president of said company: "I did not bring any suit at that time to enjoin them from doing it. They said if I would not enjoin them, put them to any trouble, that they would pay for all the damages. — Q. Yes, that is the agreement you made, was n't it? You stated there that they said if you would let them go on and build their road without interference or interruption, that afterwards they would pay for whatever damages you suffered? — A. I had no power to let them go on. — Q. I am not talking about the power; but that is the arrangement you made with the president of the road — with Mr. Pollasky? — A. Well, I did n't stop them; I did n't stop them any further. — Q. Just answer the question if that is not so? — A. What arrangement, — what do you have reference to? — Q. That you, as president of the road or the company, would not prevent them from laying their rails upon your roadbed, and interfere with the progress of the road; and Mr. Pollasky, — he was president of the San Joaquin Valley Railroad? — A. Yes. — Q. He agreed that if you would not prevent them, or the company, would not prevent them, that he would see you were paid whatever damages the company suffered by the use of that road there? — A. Well, I did n't make any such agreement with him, because I had not power to make them. — Q. What did you say to him, then? — A. I think the matter kind of dropped there; that I did n't make no arrangements because I had no power, but might have said that we would call the company together, something of that kind. I can't tell just what the conversation was. It was a long time ago. — Q. And the result of it all was that you and Mr. Pollasky — he as president *Page 206 
of his road, and you as president of your road — talked about this matter? — A. Yes; there was talk about it. — Q. And he did n't want the road stopped at that time by any suit for an injunction? — A. No. — Q. That was it? — A. That was what he wanted. — Q. And he said that if the San Joaquin Valley Railroad Company was allowed to lay its rails on your roadbed for that quarter of a mile, that his company would afterwards pay damages, whatever damages the company suffered? — A. Well, he spoke something about making it all right, or something of that kind, — that he would see. — Q. Well, you relied upon that, and didn't do anything further? — A. Well, we supposed they would do something. — Q. Yes; and you didn't take any other steps in the matter? — A. No. — Q. And let the work progress? — A. We supposed it would be satisfactory. That is all I have to say about it."
The vice-president of respondent, F.G. Berry, testified: "I had no more charge of the road than did Mr. White. At the time the Pollasky road, so-called, was built, I was a director of that company. I was not in Fresno when the graders took possession of this portion of the road. I remember about that time I came to Fresno, while they were having a controversy over taking possession; it might possibly have been the next day. Mr. White stopped their working. I came to Fresno before the road had been completed over this quarter of a mile and saw Mr. Pollasky, the president of the road, with reference to it, and he and I had a conversation with reference to the right of the Pollasky road to occupy this roadbed and take up the rails. I could not state positively the substance of the conversation. I think he said that Mr. White had been down there, and had either served or was about to serve an injunction. He said, `Now, here, stop that, it will be all right'; we were all very anxious to get that through to the timber; that was where it was supposed to go; and I think in general conversation I said to Mr. White, if they will put that down and replace it, and allow us something for it, in God's name, let it go; something to that effect; and that is the way it went; and I think they agreed to do that with Mr. White. I know nothing, however, about the matter myself, as to what they agreed with Mr. White. It was generally supposed that they were to take this up and replace it, and pay us for all damages. I do not know a thing *Page 207 
in the world about that myself. At any rate, after our conversation, Mr. White's conversation with Mr. Pollasky, there were no further objections to the use of that roadbed at that time, and we allowed them to go on and complete their road over this roadbed and take up the rails, and they went ahead and built the road on to Pollasky, about twenty-three miles from there, a broad-gauge standard railroad, and they used and operated it as a broad-gauge standard railroad from that time to the present. . . . This roadbed of ours out there was constructed upon a public highway, Tulare Avenue. The Fresno Street Railroad Company operated its road under its franchise from the county."
The owner in fee even cannot permit a railroad company to construct and operate its road through his land upon an understanding that compensation shall thereafter be made for the right of way, and then maintain ejectment if the damages be not made as per agreement. His remedy in such case is an action to recover the compensation. After the interview between the president of the San Joaquin Valley Railroad Company and the president and vice-president of the respondent, Fresno Street Railroad Company, as detailed by respondent's witnesses, the San Joaquin Valley Railroad Company went on with its work, and built and operated some twenty miles of railroad, without any further opposition or interference on the part of the respondent. A failure to bring an action, where the right exists, until after public interests have intervened will prevent its successful prosecution. Acquiescence for a considerable period after the railroad company has entered upon its duties will defeat the action to recover possession. In Mitchell v. New Orleans etc.R.R. Co., 41 La. Ann. 363, the court says: "Surely the defendant's act, in openly entering upon plaintiff's land, with plaintiff's knowledge, and in full view of his domicile, and constructing thereon a most important link in their transcontinental railway, could not subject it to such consequences." But this is not an open question, however, as it has been by us twice considered and decided adversely to plaintiff's contention, and in cases cited in plaintiff's brief. In Bourdier v. Morgan's etc. R.R. Co., 35 La. Ann. 949, it is said: "If the entry was unlawful, the plaintiffs condoned it. They should, at once, and peremptorily, have forbidden the entry of the defendant, if they intended to dispute its right to the roadbed, etc. . . . *Page 208 
They should have denied defendant access, and have prevented it by using legal process." In St. Julien v. Morgan etc. R.R. Co.,
35 La. Ann. 924, the matter is fully discussed, and the doctrine referred to is approved, — to wit: "The land-owner may, even by parol, waive the right to prepayment as a condition precedent to an entry for construction, but having waived it, he can not treat the company's possession as unlawful." To the same effect wasIndiana, Bloomington Western Ry. Co. v. Allen, 113 Ind. 581;Cairo Fulton R.R. Co. v. Turner, 31 Ark. 494;[1] Pryzbylowicz v.Missouri River R.R. Co., 17 Fed. 492.
But it is contended that respondent is not bound by the acts of its president and other officers in this matter. The company, under the circumstances, however, must have known what was going on in a matter affecting its interests, and the law will presume it did know what its president and vice-president knew. Being thus fully advised in the premises, it permitted the San Joaquin Valley Railroad Company to go on with its work and construct its road, and, as already stated, allowed it and appellants, its successors in interest, to operate the same for about four years unmolested. In such case a corporation is bound in like manner as an individual would be bound. As said in Balfour v. Fresno Canaletc., 123 Cal. 397, "It must be presumed that the corporation had full knowledge of all the facts which were known to its president. The president of a corporation is the proper person to whom notice which is to affect a corporation is to be given. The corporation has no eyes, ears, or understanding, save through its agents. The president is considered the head of the corporation, and it is his duty to report to the trustees information affecting the interests of the corporation. And the presumption is that he does so. Usually this is a conclusive presumption. (Thompson on Corporations, sec. 5288.) Appellant's counsel seems to appreciate the force of this rule, but contends that it ought not to be applied in this case. `It would destroy all safeguards and all protection to corporate property, — at least to the extent wherein the power of making, authorizing, or ratifying contracts is reserved to the board of directors.' Corporate property is no more sacred than any other property, and corporations *Page 209 
can only be reached through their agents; it behooves them to be especially careful in regard to the conduct of their agents. In no other way can knowledge be conveyed to the fictitious entity, or negotiations be had with it. It is not usual for parties dealing with a corporation to be brought before the directors to negotiate their contracts. Instead of seeing any reason for excepting this case from the rule, it seems to be exactly the case in which justice requires its application." The observation of the court in that opinion applies with equal force here.
Judgment and order reversed and cause remanded.
Garoutte, J., and Harrison, J., concurred.
Hearing in Bank denied.
[1] 52 Am. Rep. 303.
[2] 65 Am. St. Rep. 155.
[1] 50 Am. Rep. 149.
[1] 25 Am. Rep. 564.