[Civ. No. 2101.   Third Appellate District.—February 13, 1920.]

ELIZABETH H. REED, Appellant, v. OAKDALE IRRI-
GATION DISTRICT (a Public Corporation), Respond-
ent.

[1] EMINENT DOMAIN—TAKING OF PROPERTY FOR PUBLIC USE BY PUB-
LIC SERVICE CORPORATION—FAILURE OF OWNER TO OBJECT—WAIVER
OF REMEDY BY EJECTMENT OR ABATEMENT—RIGHT TO DAMAGES.—
Where property is taken for a public use by a public service cor-
poration and the owner of the property has not in any appro-
priate way objected to its being so taken, but has by silence or
quiescence, permitted the public use to be inaugurated and carried
on for some period of time, he has thus waived or lost his right
to proceed against such use of his property by ejectment or abate-
ment. If he has suffered damage to his property by reason of
such taking and use of his property, he is, of course, entitled to
be compensated in damages.

APPEAL from a judgment of the Superior Court of
Stanislaus County. W. H. Langdon, Judge. Affirmed.

The facts are stated in the opinion of the court.

F. W. Reeder for Appellant.

P. H. Griffin for Respondent.

HART, J.—Plaintiff brought the action to recover from
defendant the sum of three thousand dollars, as damages
caused by obstructions to a highway by means of a ditch
constructed therein and sand thrown from said ditch into
the highway, and to have said obstructions removed. A
jury, called to pass upon the question of damages, awarded
plaintiff $150 and she was given judgment for that amount
and costs. As to the remaining issues, the court made
findings of fact and conclusions of law and entered judg-
ment in accordance therewith. Plaintiff appeals from the
whole of said judgment on the judgment-roll alone.

The following findings will sufficiently indicate the mat-
ters in dispute: It was found that defendant is a public
corporation organized and existing under the laws of the
state of California; that, for more than seven years last
past, plaintiff has been the owner and in possession of lots

14 and 15 of the Oakdale Syndicate Tract, in Stanislaus County, as per the official map of said tract filed for record in the office of the county recorder on the first day of April, 1890.

"5. That along the southerly boundary of" said lots "there is laid out and dedicated by said map so filed, as aforesaid, a public highway, used by the public for highway purposes, forty feet in width, which plaintiff and her employees have used as a means of ingress and egress to said lots . . . ever since her ownership of same or since the twenty-ninth day of March, 1911.

"6. That said public highway is the only means of ingress and egress to plaintiff's property.

"7. That during the months of July and August, 1915, defendant entered in and on the said public highway and constructed an irrigation ditch along the center of said highway" from a certain point to a point "beyond the westerly boundary line of lot 14 of plaintiff's property.

"8. That during the month of December, 1917, defendant enlarged and cleaned out said irrigation ditch and threw the dirt upon the enbankments of same in such a manner as to entirely obstruct the whole highway" between the points above mentioned.

"9. That said ditch is constructed in sandy soil, and in the cleaning and enlarging of said ditch, great quantities of coarse, white sand were thrown out on each side of said ditch completely obstructing said highway and making same impassible for loaded animal or motor drawn vehicles of any kind and preventing the ingress and egress of plaintiff to her said property.

"10. That plaintiff's property is planted to alfalfa and almond-bearing nut trees, and produces large crops of alfalfa hay and almond nuts.

"11. That it is necessary at different times to go upon said lands of plaintiff with horses and farming implements to take care of the irrigation ditches located thereon and to cultivate, prune, and spray the said almond trees and to cut, rake, and haul the alfalfa grown on said lands and harvest and haul to market the almond nuts and hay grown thereon.

"12. That by reason of the obstruction of said public highway by defendant plaintiff is prevented from going

upon her said lands and taking loaded vehicles to and from said lands over said highway.

"13. That said irrigation ditch is of a width at the top of from twenty to thirty feet and of a depth of four feet, with embankments thrown out on either side of said ditch, all of which embankments and ditch are located in the highway mentioned in plaintiff's complaint."

It was also found that an allegation in the answer that plaintiff consented to the construction of said irrigation ditch in said highway was untrue.

The judgment is: "1. That plaintiff recover $150 damages.

"2. That the sand deposited in the road . . . by the defendant . . . from said irrigation ditch is a nuisance and that said nuisance be abated.

"3. That the public rights have intervened as to the ditch and that same cannot be abated as a nuisance.

"4. That plaintiff, by reason of the conveying to her and her predecessors in interest of" said lots "has acquired an easement on said highway but that said easement is subordinate to the public rights of the Oakdale Irrigation District, in reference to the maintenance of said irrigation ditch in said highway.

"5. That the road in question . . . is a public highway.

"6. That plaintiff have her costs of suit."

The defendant is a public service corporation, engaged in distributing water to the public for farming and domestic purposes within the territory to which the water from its ditch is available. From the findings it appears that the defendant's ditch was constructed over and along the portion of the highway to which it is alleged in the complaint it constitutes an obstruction in the year 1915. The complaint here was filed by the plaintiff on June 18, 1918, approximately three years after the ditch had been constructed and presumably in active operation. Thus it is clear that the portion of the highway over and along which the ditch was constructed, and which portion, according to the complaint, is thus so far obstructed as to prevent vehicles from passing over it to and from the plaintiff's place, had, long before plaintiff made any complaint in reference thereto, or objected to the maintenance of the ditch at that point on the highway, been taken for and devoted to a public use. In other words, according to the findings,

which we must presume were authorized by the evidence, the plaintiff remained passive and made no protest at the time of the construction of the ditch at the point on the highway referred to and remained so and still made no objection to the construction of the ditch until after it had been fully completed and was being operated as an irrigating ditch.

[1] It is plain to us that the facts of this case bring it squarely within the cases which hold that, where property is taken for a public use by a public service corporation and the owner of the property has not in an appropriate way objected to its being so taken, but has, by silence or quiescence, permitted the public use to be inaugurated and carried on for some period of time, he has thus waived or lost his right to proceed against such use of his property by ejectment or abatement. In such case, if he has suffered damage to his property by reason of such taking and use of his property, he is, of course, entitled to be compensated in damages. The constitution expressly gives him this right (Const., art. I, sec. 14), and such right in the plaintiff here is not denied by the respondent. But, in the case stated, the owner is restricted to the relief which is obtainable in an action for damages. The theory of the rule as above stated is that after property is taken for a public use by a public service corporation and has been devoted to that purpose, the public thereby and thereupon acquires rights in such public use which cannot be divested or destroyed at the behest of a private individual upon the ground or for the reason that his property will suffer damage or deteriorate in value, or even become valueless for the purposes to which it is peculiarly adapted and for which it has always been used, by reason of the act depriving him of such of his property rights as were necessary for the installation and prosecution of the public use.

In *Crescent Canal Co.* v. *Montgomery,* 143 Cal. 248, [65 L. R. A. 940, 76 Pac. 1032], the plaintiff had extended its canal so that it crossed over the lands of one Poyser and one Johns. These parties made no objection at the time against the construction of the canal extension over and across their lands. They subsequently conveyed the lands to the defendants, who, upon taking possession, proceeded to cover up and fill in the portion of the canal crossing said

lands, claiming that the same was extended over the lands
without and against the consent of their grantors, Poyser
and Johns. The plaintiff instituted an action against de-
fendants to enjoin the destruction of the canal and for
damages. The trial court found that Poyser and Johns
never gave their consent to the extension of the canal,
and judgment accordingly went to the defendants. An ap-
peal was taken to the supreme court from the order denying
plaintiff a new trial, and the order was reversed, Chief
Justice Beatty, the author of the opinion, saying, among
other things: "The court, amongst other things, finds that
Poyser and Johns never consented to the extension of the
canal. The evidence of Poyser and Johns sustains this
finding so far as an express consent is concerned, but a tacit
consent evidenced by conduct quite as significant as any
express words could possibly be is proved by evidence which
is not only uncontradicted, but is expressly admitted by
Poyser and Johns to be true. It is confirmed, also, by the
circumstances and situation of the parties."

Again, the late chief justice further said in that case: "The
plaintiff is the agent of the state in the administration of a
public use (Const., art. XIV, sec. 1), and is within the protec-
tion of the principle of the decision, and of the authorities
cited in *Fresno St. Ry. Co.* v. *Southern Pacific R. R. Co.*,
135 Cal. 202, [67 Pac. 773], and of *Southern California
Ry. Co.* v. *Slauson*, 138 Cal. 342, [94 Am. St. Rep. 58, 71
Pac. 352]. It is to be presumed that a farming community
dependent for a vital necessity upon the continuous opera-
tion of this canal has become established upon the land
which it covers. The establishment of such a community
with the improvements and expenditures necessarily in-
volved was one of the results of the acquiescence of Poyser
and Johns in the extension and increased efficiency of the
canal. They may have had a right to demand and receive
a reasonable compensation for any damage to their lands
caused by such extension. But they had no right to abate
the canal by action, and no right to injure or destroy it."

In *Gurnsey* v. *Northern California Power Co.*, 160 Cal.
699, [36 L. R. A. (N. S.) 185, 117 Pac. 906], the action
by plaintiff was in ejectment to dispossess defendant of a
certain described portion of plaintiff's lands and premises,
over and across which a public wagon road or highway leading

from the city of Red Bluff to the eastern boundary of Te-
hama County had, for over forty years, existed and been
maintained. The defendant, a public service corporation,
organized for the purpose and engaged in the business of
furnishing the public with electricity for power, heat, and
lighting, and also furnishing municipalities, cities, and
towns with electricity for like purposes, including the
lighting of highways, had erected its power lines along said
highway, digging holes and erecting poles for that purpose. ·
The late Mr. Justice Lorigan prepared the opinion in that
case, and his clear and forceful discussion of the principles
governing cases whose facts are analogous to those of the
case at bar involves the consideration of so much that has
peculiar and cogent application to the present case that, to
give the views as therein set forth as they should be given
would necessitate the reproduction of the entire opinion
herein, and this we do not deem necessary, for it will be
sufficient to give here a brief statement of what is decided
in that case, viz.: 1. That, while the maintenance of the
defendant's power line in the highway over the land of
plaintiff was not for a purpose incidental to the use of such
highway and is inconsistent with the dedication of the high-
way to the use of the public, and was, therefore, an inva-
sion of the plaintiff's property rights, for which he was
entitled to redress, his remedy under the circumstances of
the case, he not having complained or objected until
after the power line had been installed and put in operation
and public rights had intervened therein, was entirely in an
action for damages and not in ejectment. 2. That among
the exceptions to the general rule that one may maintain
ejectment against either an individual or a corporation who
has without right entered upon his land is, in the case of
a public corporation, where it appears that, notwithstanding
that the entry was originally without right, the owner per-
mitted the corporation to make the entry on his land and
construct the works for which the land was thus appro-
priated, and failed to bring any action until after public
interests, by reason of the construction, had intervened.
In such case, the right to maintain ejectment is denied and
the owner of the land is remitted and limited to an action
for damages for redress. 3. That the principle which
underlies this rule is not based on any consideration of

rights pertaining to the public service corporation itself, but solely upon considerations of public policy. Nor is the rule based so much upon the doctrine of estoppel, but mainly on the great principle under which the rights of the citizen are sometimes abridged in the interest of the public welfare. "Public policy requires that, under such circumstances (where the owner of land has suffered by silence or quiescence a public service corporation to enter thereon, and expend large sums in the construction of the works, before he complains of the trespass), the remedy of ejectment should be denied to plaintiff, when the effect of a judgment in such an action would be to destroy the efficiency of the electric line system by taking possession from defendants of that part of it constructed over the land of plaintiff, and thus destroying the public rights which have intervened."

In *Miller & Lux* v. *Enterprise Canal & Land Co. etc.*, 169 Cal. 415, [147 Pac. 567], Mr. Justice Shaw examines exhaustively the principles above enunciated and reviews *in extenso* the cases 'in which they have been applied. We refer to that case as a clear exposition of the doctrines referred to, and also to the cases therein cited and considered.

The case of *Eltinge* v. *Santos*, 171 Cal. 278, [Ann. Cas. 1917A, 1143, 152 Pac. 915], cited by appellant, is not pertinent to the facts of this case. There the controversy was between private individuals and no question as to the intervention of public rights arose.

No point is made here that the compensation awarded plaintiff for damages sustained by her by the act of the defendant in invading her property rights in the manner described is inadequate. The abatement of the ditch was properly denied on the doctrines enunciated and applied in the cases above considered and referred to.

But plaintiff further contends that the judgment is inconsistent with the findings and that it is uncertain and ambiguous. It is not necessary to follow in detail the ramifications or course of reasoning to which learned counsel for the plaintiff resorts to support this contention. It is considered quite enough to say that a comparison of the judgment with the findings and the plaintiff's complaint will show that there is no inconsistency between the findings and

the judgment or any uncertainty or ambiguity in the judgment. The complaint alleges: "That during the month of December, of the year 1917, defendant enlarged and cleaned out said irrigation ditch and threw the dirt upon the embankments of same in such a manner as to entirely obstruct the whole highway, from the intersection of said beforementioned public highway with Central Avenue, of said Oakdale Syndicate Tract, running westerly along said avenue, and in front of plaintiff's property, to the western boundary line of lot 14 of said tract. That said ditch is constructed in sandy soil, and in the cleaning out and enlarging of said ditch great quantities of coarse, white sand were thrown out on each side of said ditch, completely obstructing said highway and making same impassible for animal or motor drawn vehicles of any kind and completely preventing the egress and ingress of plaintiff to her said property."

The court found those allegations to be true and that to that extent the defendant was maintaining a nuisance and thus had trespassed upon or infringed the plaintiff's property rights, and obviously upon those findings the court awarded damages to the plaintiff and decreed the abatement of the nuisance so maintained. This is as far as the findings and the judgment go, so far as the plaintiff's rights are concerned. They, in other words, found and decreed that there was a total obstruction of the highway resulting from the dumping thereon by defendant from its ditch, when in December, 1917, it enlarged and cleaned out the same, of large quantities of dirt and sand, and that such obstruction constituted a nuisance, and abated it. Then the findings declare and the judgment decrees that, public rights having intervened by reason of the construction of the ditch, no action by an individual would lie to abate the maintenance of the ditch. There is no inconsistency between the latter finding and the judgment in that respect and the adjudication of the plaintiff's rights, as found and decreed by the court and above referred to. Counsel argues, however, that the finding and that part of the judgment decreeing that plaintiff has an easement in the highway and the finding and that part of the judgment declaring that the ditch cannot be abated are irreconcilably inconsistent, because, as he asserts, the ditch and its bank

cover the entire width of the highway and that the mere removal only of the sand dumped upon the highway from the ditch when the ditch was enlarged and cleaned out would not make the highway suitable for use as such. But the findings do not show that the entire width of the highway is covered by the ditch. From finding 7 it appears that the ditch runs along the center of the highway, and we cannot assume, in the absence from the record of evidence touching that proposition, that the ditch itself covers the whole width of the highway. To the contrary, the presumption is, under the state of the record before us, that there was evidence which supports the theory of the findings and so show that the plaintiff could, with the removal from the highway of the sand and dirt dumped there by defendant when in 1917 the ditch was enlarged and cleaned out, enjoy her easement in or right to the use of the highway for all the purposes which the exigencies of her business as a farmer and fruit-grower might require.

Without further consideration of the matter, we hesitate not to state our conclusion to be that a careful examination of the findings and the judgment in comparison with the averments of the pleadings will show that the complaint that there is an inconsistency between the findings and the judgment, or that the judgment is ambiguous and uncertain in its terms, is without foundation.

No reason appears to us for disturbing the judgment appealed from, and it is, accordingly, affirmed.

Ellison, P. J., *pro tem.*, and Burnett, J., concurred.