[Sac. No. 3822. In Bank.—April 30, 1928.]

B. F. CONAWAY et al., Appellants, v. YOLO WATER & POWER COMPANY (a Corporation) et al., Respondents.

Elmer W. Armfield and Arthur B. Eddy for Appellants.

Charles W. Thomas, Hurst & Hurst, Grant & Bailey, Downey, Downey & Seymour, Downey, Brand, Seymour & Dunn and White, Miller, Needham & Haber for Respondents.

PRESTON, J.—This is an action by plaintiffs, owners of certain lands lying at the mouth of a watercourse situated in Yolo County known as Willow slough, seeking to enjoin defendant Yolo Water & Power Company, a corporation, and about 80 other defendants, from unlawfully draining into said watercourse after use for irrigation water theretofore conducted into this watershed from Cache Creek.

Appellants have presented a brief in three volumes, which with the appendix covers some 2,500 pages. We mention it because it is admirably arranged, indexed, and cross-indexed and is worthy of imitation; besides it contains a full presentation of the law respecting the many issues raised. But in our view the appeal is determined adversely to them by a rule of public policy in the nature of an estoppel specially pleaded by the defendants.

We are also of the view that the complaint on its face shows this want of equity: The issues made by it were not enlarged to any extent by the answer or otherwise. Defendants answered with general and certain special defenses but asked no affirmative relief of any kind. It is proper, therefore, to consider the legal effect of the material allegations of the complaint, which as summarized by appellants are in substance as follows:

That the defendant Yolo Water & Power Company is now and at all times herein mentioned has been a public utility corporation organized and existing under and by virtue of the laws of the state of California, and engaged in the diversion, sale, and distribution of water for irrigation purposes; that plaintiffs at all times herein mentioned have been and now are the owners and in possession, and entitled to the possession of, all those certain lands situate, lying, and being in the county of Yolo (describing them); that said lands are agricultural lands and have produced and now are producing valuable crops of rice, beans, and grain and other crops, and are adapted to the production thereof.

That Willow slough is now and from time immemorial has been an unnavigable natural watercourse, having its source in or near the foothills in the southwesterly part of Yolo County, and flowing thence in a general easterly direction, and thru and terminating on plaintiffs' said lands; that plaintiffs' said lands are flat and comparatively level, and

are all lower than the lands hereinafter mentioned and being cultivated, worked, operated, and irrigated, as herein alleged by the defendants; that a portion of plaintiffs' said lands are lower than the natural banks of said Willow slough.

That Willow slough, where it crosses the westerly boundary line of the plaintiffs' said lands, has a deep bed and high banks; that easterly of said westerly boundary the bed of the said Willow slough becomes more shallow and the banks thereof lower until the said bed and banks lose their identity and the water flowing therein spreads out over the adjoining lands of the plaintiffs hereinabove described.

That in the late spring and during the summer and fall months, and during the time crops are customarily planted, grown, and harvested on plaintiffs' said lands, the natural water falling or rising within the watershed of said Willow slough and its tributaries, which finds its way ultimately into the said Willow slough, is small in quantity and does not at such seasons fill the banks of said Willow slough, or spread out over plaintiffs' said lands where the bed and banks of said Willow slough lose their identity, as aforesaid, or elsewhere.

That but for the acts of all of the defendants hereinafter mentioned and complained of, all of the said lands of the plaintiffs at all times herein mentioned have been and now are susceptible of being cultivated and cropped, and valuable crops of rice, beans, and grain have been planted and produced thereon; that the natural water falling or rising within the watershed of said Willow slough and its tributaries and which finds its way ultimately into said Willow slough and flows therein, has not prevented, nor does not now prevent, plaintiffs from successfully cultivating their said lands, planting the same to crops, and harvesting profitable crops therefrom during the late spring, summer, and fall months of the year.

That defendant Yolo Water & Power Company within five years last past has been and now is diverting large quantities of water flowing in Cache Creek, a natural watercourse, and by means of a system of canals, laterals, and ditches has carried and now is carrying the said water so diverted into the watershed of the said Willow slough and its tributaries, and has sold or otherwise disposed of, and

now is selling or otherwise disposing of the said waters so diverted in large quantities to all of the other defendants for the purpose of flooding vast areas of land devoted to the cultivation of rice and other agricultural and horticultural products, and for irrigation generally; that the defendant Yolo Water & Power Company at all times knew and now well knows that the said waters so diverted and now being diverted by it from said Cache Creek, as aforesaid, found and now find their way into the said Willow slough, and flowed and now flow therein and thru the same to the plaintiffs' said lands spreading thereover and causing the injury to the plaintiffs' said lands and crops hereinafter complained of.

That the watershed of which said Cache Creek is the natural drainage channel is foreign to and entirely different and removed from the watershed of which the said Willow slough and its tributaries are the natural drainage channels.

That all of the defendants within five years last past have been and now are engaged in agriculture, and have purchased or otherwise obtained, and now are buying or otherwise obtaining water from the said Yolo Water & Power Company, or from other sources, which they have used and are now using for irrigation upon lands which they either own, lease, operate, or manage, all of which are situated within the watershed of the said Willow slough and its tributaries and at a higher elevation than the plaintiffs' said lands; that the said water which has been and is now being so used by all of the said defendants for irrigation has not been, and is not now being absorbed by the soil, but has been and now is by all of the said defendants being drained into said Willow slough and its tributaries by means of waterways, natural depressions, artificial channels and ditches, and by seepage.

That the quantity of said irrigation water so drained by all of said defendants from said lands either owned, leased, operated, or managed by them has been and now is very great, and has been and now is unnaturally flowing in the said Willow slough, and has found and now finds its way by force of gravity and by seepage to the said lands of the plaintiffs and spreads thereover, and during the said cropping seasons the said water so spreading over and flooding the plaintiffs' said lands saturates the ground and pre-

vents the cultivation thereof and makes it impossible to gather such crops as might be grown thereon and destroys the same; that the said water which has been and now is being so used has and now does become charged and saturated with alkali and other saline substances and materials present and existing in and on the lands being irrigated by the defendants, as aforesaid; that the said alkali and other saline substances and materials have been and now are being carried in solution in said irrigation water drained into said Willow slough and its tributaries, as aforesaid, to and upon the plaintiffs' said lands, thereby rendering the said lands unfit for agricultural purposes, and destroying the fertility and productivity thereof.

That all of said defendants either owning, leasing, operating, or managing lands within the watershed of said Willow slough and its tributaries are now, by means of water developed by wells and pumps on their said lands and water purchased or otherwise obtained from the said defendant Yolo Water & Power Company, irrigating their said lands, as aforesaid; that the said defendants are continuing to develop water by means of said wells and pumps, and are continuing to purchase or otherwise obtain water from the said Yolo Water & Power Company and to use such water to irrigate said lands, as aforesaid, and all of said defendants continue and threaten and intend and will, unless restrained by an order of this court, drain all of the said water used for the irrigation of said lands, as aforesaid, into the said Willow slough and its tributaries, and discharge the same unnaturally, thru said slough and its tributaries on to and over plaintiffs' said lands, and will by such acts continue to prevent the cultivation of plaintiffs' said lands and the operation thereof, and render impossible the harvesting of crops growing and standing thereon, and will destroy the same, and will injure the freehold, all to the great and irreparable damage and injury of these plaintiffs.

That the continuation by defendants of all of the acts herein complained of by plaintiffs will ripen into and constitute a right adverse to plaintiffs; that plantiffs have no plain, speedy, nor adequate remedy at law.

That unless defendants are restrained, as plaintiffs hereinafter pray that they be, defendants will continue to drain

said waters into said Willow slough and its tributaries and on to plaintiffs' said lands; that it will be impossible for plaintiffs to ascertain or determine the amount of damage or injury sustained by them by reason of each of the acts of defendants herein complained of; that if defendants continue to do the acts and things herein complained of by plaintiffs, plaintiffs will be compelled to bring many actions against each of said defendants for the commission by each of them of the torts hereinabove complained of; that the bringing of such actions would be continuous and would result in a multiplicity of actions.

▋ It is perfectly true that not even a corporation possessing the power of eminent domain may under the constitution (art. I, sec. 14) take or damage private property without first making adequate compensation. But this right may be waived by the owner and in order to prevent the obstruction of progress he must be held to diligence in asserting his right as against a concern administering such a public use. If he allows his property right to be invaded and either taken or damaged for a public use and the public right has so far intervened as to justify the belief that objection has been waived, then in law the property right so taken or damaged is to that extent dedicated to the public use.

"Where the complainant has stood by while the development was made for public use, and has suffered it to proceed at large expense to successful operation, having reasonable cause to believe it would affect his own water supply, the injunction should be refused and the party left to his action for such damages as he can prove. (*Fresno St. R. Co.* v. *Southern Pacific Co.*, 135 Cal. 202 [67 Pac. 773]; *Southern California Ry. Co.* v. *Slauson*, 138 Cal. 342 [94 Am. St. Rep. 58, 71 Pac. 352].)" (*Katz* v. *Walkinshaw*, 141 Cal. 116, 136 [99 Am. St. Rep. 35, 64 L. R. A. 236, 74 Pac. 766, 772].)

"So far as this company is concerned, the case comes within the rule established in *Fresno St. R. Co.* v. *Southern Pacific Co.*, 135 Cal. 207 [67 Pac. 773], and followed in *Southern California R. Co.* v. *Slauson*, 6 Cal. Unrep. 874 [68 Pac. 107], and *Crescent Canal Co.* v. *Montgomery*, 143 Cal. 252 [65 L. R. A. 940, 76 Pac. 1032]. This rule briefly stated, is that where one whose property is taken for a pub-

lic use has stood by without objection, knowing that it was so taken and applied, and has allowed the public use to be instituted and carried on at great expense, and has permitted the people benefited thereby to adapt themselves to the new conditions and avail themselves of the conveniences and advantages thereby afforded, he cannot thereafter maintain an action to enjoin the continuance of such public use or to recover possession of the property so taken, but will be relegated to an action for damages." (*Barton* v. *Riverside Water Co.*, 155 Cal. 509, 515 [23 L. R. A. (N. S.) 331, 101 Pac. 790, 792].)

"It is plain to us that the facts of this case bring it squarely within the cases which hold that, where property is taken for a public use by a public service corporation and the owner of the property has not in an appropriate way objected to its being so taken, but has, by silence or quiescence, permitted the public use to be inaugurated and carried on for some period of time, he has thus waived or lost his right to proceed against such use of his property by ejectment or abatement. In such case, if he has suffered damage to his property by reason of such taking and use of his property, he is, of course, entitled to be compensated in damages. The constitution expressly gives him this right (Const., art. I, sec. 14), and such right in the plaintiff here is not denied by the respondent. But, in the case stated, the owner is restricted to the relief which is obtainable in an action for damages. The theory of the rule as above stated is that after property is taken for a public use by a public service corporation and has been devoted to that purpose, the public thereby and thereupon acquires rights in such public use which cannot be divested or destroyed at the behest of a private individual upon the ground or for the reason that his property will suffer damage or deteriorate in value, or even become valueless for the purpose to which it is peculiarly adapted and for which it has always been used, by reason of the act depriving him of such of his property rights as were necessary for the installation and prosecution of the public use." (*Reed* v. *Oakdale Irr. Dist.*, 46 Cal. App. 139, 142 [188 Pac. 832, 833].)

"The plaintiff's predecessor in interest stood by while one million three hundred thousand dollars of the defend-

ant's money was being expended in the erection of its dam, tunnel, and plant. He even assisted in some ways in the work by furnishing commodities which the defendant needed in the prosecution of its enterprise, and he sold part of his land to the defendant for a damsite. All this the plaintiff knew when he purchased the land, which he did while the defendant was in the midst of its work of building the dam and preparing to divert the waters of the river. It is impossible that he did not know that the purpose of this enterprise was for a public use; that the defendant was about to inaugurate a public service, and that the waters of the river when diverted would be used for the purposes to which it was afterwards put. In view of these facts, and of the fact that he waited four years after the public use began, and until thousands of people had become dependent upon it for light and power and necessary water for irrigation, his right to an injunction is barred by this intervening of the public interest." (*Holmes* v. *Snow Mountain W. & P. Co.*, 36 Cal. App. 394, 397 [172 Pac. 178, 180].)

"In substance, the doctrine established by these decisions, tho not, strictly speaking, the doctrine of prescription, at least amounts to this: That where a person has suffered property belonging to him and under his control to be taken and devoted to a public use by one engaged in administering such use, and the matter has gone so far that the beneficiaries thereof rely on its continuance and adjust their affairs accordingly, such owner having knowledge thereof and making no objection or protest, this conduct will be regarded by the courts as a dedication by such owner of the property to the particular public use, and he cannot thereafter interrupt nor prevent the same, his only remedy being to seek compensation for the property he has thus allowed to be taken, or as indicated in the Newport case." (*Miller & Lux* v. *Enterprise Canal etc. Co.*, 169 Cal. 415, 429 [147 Pac. 567, 573]; see, also, *Gurnsey* v. *Northern California Power Co.*, 160 Cal. 699, 711 [36 L. R. A. (N. S.) 185, 117 Pac. 906].)

From the allegations of the complaint it appears that defendant utility in exercising a public use has for approximately five years next prior to the filing of the complaint diverted water from one watershed into another and distributed it to the other defendants and the drainage from

use has for all said period reached plaintiffs' lands thru said slough to their injury; that plaintiffs have made no. objection thereto in any way but have silently borne the injuries; that defendants intend to continue this use of the said waters to the continued detriment of plaintiffs. But no allegation is found charging defendants or any of them with an intention to enlarge the diversion or distribution of said water nor to increase the capacity of the diverting or transportation works. Nor is there any allegation of an intention on the part of any defendant to increase the amount of water to be used thereafter on any of his said lands, nor is there any allegation that an increase in the amount of drainage water is threatened. In other words, so far as alleged, there is no threat to increase the existing burden or drainage to plaintiffs' lands.

Defendants pleaded in their answer the intervention of a public use and called for an application of the above rule of estoppel. We can find no reason why it does not, as found by the court, fully operate in this case. Suit for this identical relief could have been instituted any day for approximately five years next preceding its actual commencement. ▉ Learned counsel for appellants contend that this rule is inapplicable because the public use in these waters spends its force on delivery to the rice grower at his premises and that the drainage from the grower's lands is of no concern to the utility that furnishes the water and that the private land proprietors are without power to invoke the rule. We cannot in this case subscribe to such limitation upon the doctrine.

The institution of this suit against both the utility and the water users argues strongly against the position, for if this limitation be sound then the utility is really not a necessary party to this litigation. If the rice growers purchased the water at the Cache Creek diversion point, the public interest would cease there under this doctrine. Then, too, if the utility were to buy a drainage right from the plaintiffs it would be an *ultra vires* act under such doctrine. If the utility were to institute an action in eminent domain to acquire from plaintiffs a right of way or easement for the drainage of these waters, the action would fail for want of proof of exercise of a public use for such purpose. Irrigation without drainage is impossible. Rice-growing with-

out a large amount of drainage is impossible. The utility might not be able to sell water in this locality or even to exist without first providing a drainage system for its users. Drainage in some localities might be as important as the supply of water itself.

We think that under the allegations of this complaint the public use attaches at the inception of the right of diversion and exists until it has wrought its purpose and in this case at least that point is not reached until a system of drainage is provided. The private owner who stands by inactive, hesitating, or half consenting until the burden to his land becomes a part of the public use must content himself with legal as distinguished from equitable remedies for relief.

If we resort to the record we find that the court upon ample evidence finds that the plaintiffs did not protest or object but remained silent for more than five years; that they reconstructed and improved or manipulated the channel of this slough probably to better handle this drainage water and for a season or two actually used this drainage in the growing of rice upon their own lands. The court also found that the use made of this drainage by the upper users on the watershed of the slough was such that plaintiffs could not at any time mentioned herein have been ignorant of the damage, if any, that these drainage waters have done or would or will do. The court further found that there was no other feasible method of drainage except thru said slough and thru plaintiffs' lands and so relying on this fact, the utility spent large sums of money to equip itself to divert and distribute these waters and, too, that the rice growers spent large sums in preparing their lands for rice culture and to receive and apply their quota of these waters. Defendant utility has therefore acquired with the same effect as if it had sued in eminent domain the right or easement to burden the lands of plaintiffs to the extent alleged in the complaint and found by the court. The answers also make the following defenses: Laches, statute of limitations, irrevocable license, and some others. We deem it unnecessary and inadvisable, however, to discuss these additional special defenses, but we are not intending to have it inferred that we think they are all without merit.

So much of the judgment as denies plaintiffs an injunction is affirmed, but the cause is remanded with permission to them to pursue herein, if so advised, any other remedy not inconsistent with the holding here announced.

Langdon, J., Richards, J., Tyler, J., *pro tem.*, Waste, C. J., and Shenk, J., concurred.

Rehearing denied.

Curtis, J., dissented.