[L. A. No. 17655. In Bank. Oct. 2, 1942.]

WALTER C. LAMB, Appellant, v. CALIFORNIA WATER & TELEPHONE COMPANY (a Corporation), Respondent.

Lowell Howe and Charles C. Loosli for Appellant.

Bacigalupi, Elkus & Salinger and Philip Storer Thacher for Respondent.

EDMONDS, J.—A contract entered into more than 50 years ago in connection with the water which is made available for irrigation by the Sweetwater Dam in San Diego County, is the basis of the appellant's action for declaratory and other relief. By that contract, the respondent's predecessor in interest gave a perpetual right to the use of water upon a certain tract of land. The respondent, a public utility, now refuses to supply water except upon the payment of the rates fixed for all users.

In the year 1884, Erastus Lake acquired certain lands riparian to the Sweetwater River. Two years later, the San Diego Land & Town Company, an upper riparian owner, began the construction of the Sweetwater Dam for the purpose of impounding all the waters of the river and, at the same time, commenced the construction of water mains and distributing systems in anticipation of sales of water to the inhabitants of the surrounding area.

The dam was completed in the early part of 1888. Certain differences arose over the diversion of the river's waters, and also because of the maintenance, through Lake's property, of a water main constructed by the water company. The dispute was submitted to arbitration, and the decision of the arbitrators was confirmed in a written contract between Lake and the company.

By the terms of this agreement, in consideration of Lake's granting to the company an easement for a water main through his land, and his express waiver of all claims "for other or further compensation or damage" which the land or Lake as its owner "may have already sustained, or which may be hereafter sustained . . . by reason of the diversion

of the waters of said river'' by the company, ''or the construction and maintenance of said line of pipe, or the entry upon said lands for the inspection and repair of said pipe and taps under this agreement,'' the company granted Lake ''a perpetual right to him and his assigns, said right to be appurtenant to and to run with the land, to use all the water necessary for the irrigation at all times'' of Lake's property at a rate not to exceed $3.50 per acre annually. The company and its successors in interest, including the respondent company, furnished water in accordance with this agreement for almost 50 years.

In 1937 the respondent by letter notified the appellant Lamb, the present owner of the land formerly owned by Lake, that it had completed construction of a new water main and was therefore abandoning the easement through his property created by the contract. In addition, the respondent said, thereafter any water service would ''be rendered pursuant to the company's applicable rules and regulations and to the company's rates applicable for such service on file with the Railroad Commission of the State of California.'' Upon receipt of this notice, Lamb began this action for a declaration of his rights under the contract of 1888, alleging that he is entitled to water service at the contract rate. Claiming that he has no adequate remedy at law to protect his rights under the contract, Lamb also asks that his right to receive water from the company be declared an easement in favor of his land and a perpetual burden upon the plant and distributing system of the respondent, and he seeks an injunction permanently enjoining the company from raising the rates on the water furnished to him pursuant to the contract and requiring it to continue to supply the water upon the terms specified in the agreement.

By way of answer the respondent interposed four defenses: (1) That the parties to the contract intended their respective rights and obligations to continue only so long as the company maintained its easement on the Lake property; (2) that the San Diego Land & Town Company was organized for the purpose, among others, of supplying water to the public and in 1888 dedicated all waters thereafter acquired by it to the use and service of the public, and that it was a public utility at the time the contract in question was executed; that the company has returned and released to the appellant all rights it is entitled to receive under the con-

tract; (3) that an application for an order abolishing the alleged preferential and discriminatory rates for water and services furnished the appellant had been filed and was then pending with the Railroad Commission of the State of California, and the commission has the power to abolish discriminatory, unreasonable and preferential rates being enjoyed or claimed by any consumer regardless of any written contract existing between the consumer and the public utility; (4) that the appellant has used a quantity of water greatly in excess of that "necessary for the irrigation . . . of . . . [Lake's] 15 acres."

Pending the trial of the action, the Railroad Commission dismissed the company's application without prejudice. The third defense was then stricken by the trial court.

In addition to the facts stated above, the following testimony is uncontradicted: The charter of the company, issued in 1881, states that the company was organized, among other purposes, for "the supply of water to the public." After commencing construction of the dam, the company brought suit, in the spring of 1887, to condemn as a reservoir site and for "a public use" a parcel of land lying above and adjacent to the dam then under construction. In the following year, the board of trustees of National City passed an ordinance authorizing the company to lay and maintain water pipes in the city for the purpose of supplying water to the city and the inhabitants thereof for the term of 50 years, and to charge and collect such fees or rates as the city board of trustees should establish. On the same day, a rate ordinance was passed by the city fixing the charges for water service furnished to its inhabitants.

At the time the Lake contract was executed, the company had received 212 applications for water service from the residents of National City and also the inhabitants of the surrounding area. The application forms concluded with the proviso "(This Contract shall remain in force until the first day of next January, when it may be terminated at the request of either party; but in case no such request is made, then the same shall continue in force for one year thereafter, and so on from year to year, until such request is made. . . .)"

Upon this evidence the trial court found that the company constructed the Sweetwater Dam for the purpose of impound-

ing the waters of the Sweetwater River above the Lake land; that the dam and water distributing system were completed in February, 1888, at which time the company began the distribution of water to the surrounding area. The court also found that Lake took no measures to prevent the erection of the dam and actually acquiesced in such erection; and that it was manifest, or in the exercise of ordinary diligence should have been manifest, to Lake that its purpose was "to devote, not a part only, but all of the flow of the river to be effectively impounded by it to a public use." In addition, the court's findings are that on or before the completion of the dam in February, 1888, the company definitely indicated its intention to devote all of the flow of the river impounded by it to a public, as distinguished from a private, use, including water destined for a different use than the supply for National City; and that the company had, prior to the execution of the Lake contract, become a public utility. The court concluded that, when the Lake contract was made, the company was entitled, in the capacity of a public utility, to make use of all of the flow of the Sweetwater River effectively impounded by the dam, and that it had dedicated all such water to the public use long prior to the execution of the contract. Accordingly, the judgment upholds the Lake contract as a valid and subsisting agreement, subject to the regulation and control of the Railroad Commission, and denies the appellant either an injunction or specific performance.

The appellant, at great length, analyzes and attacks the findings of the trial court, asserting that it (a) extended the rule of estoppel by substituting imputed knowledge for actual knowledge; (b) charged Lake with knowledge of the contents of a condemnation complaint to which he was not a party; (c) ignored the element of estoppel assertedly requiring a change in position on the part of the public in reliance upon the acquiescence of the riparian owner, and (d) ignored the fact that the estoppel had not been pleaded. He also contends that three of the trial court's findings are not supported by the evidence. Thus he charges that the trial court based its finding that Lake took no measures to prevent the erection of the dam, acquiesced in such erection, and by the use of ordinary diligence should have ascertained that all of the flow of the river effectively impounded by the dam

was dedicated to a public use, by charging him with knowledge of the contents of the condemnation complaint.

The specific finding that on or before the completion of the dam in 1888 the company indicated its intention to devote all the water effectively impounded by the dam to a public, as distinguished from a private, use, is attacked by the appellant upon the ground that there is no evidence from which the court could find that the Sweetwater Dam was completed in that year. He argues that the only evidence from which the court could possibly find that the company indicated an intention to devote the impounded waters to a public use is the condemnation complaint, which, he asserts, "can in no wise affect the appellant's rights under the contract here before the court." Moreover, he says, the finding that the company, prior to the execution of the contract, had begun actual service of water to areas either inside or outside of National City is totally unsupported by the evidence.

Other points are also relied upon. The question of adequacy of consideration for the contract was not litigated in this action, urges the appellant, and therefore no finding thereon is proper. Discussing the merits of his action, he contends that when a riparian owner transfers his riparian rights to a water company and simultaneously receives from it the right to receive a quantity of water for the irrigation of his land, the water conveyed to him retains its riparian character even though the land no longer borders upon the stream. And if, because a public interest has intervened, the appellant is not entitled to an injunction to protect his asserted riparian rights, then he argues that, although relegated to an action for damages, his damages should be fixed by the judgment in the present action.

Answering these points, the respondent contends that all of the essential findings of the trial court are supported by substantial evidence. According to the water company, the repeated assertion of the appellant that the knowledge of the contents of the condemnation complaint filed in 1887 was erroneously imputed to Lake by the trial court, rests upon a misconception of the purpose for which the condemnation pleadings were introduced in evidence. The allegations of the complaint, it asserts, were merely offered in evidence to show a declaration of intention by the company to dedicate the impounded waters to a public use at a time prior to the execution of the contract, and not to charge Lake with knowl-

edge, actual or imputed, of such declarations as the basis for an estoppel. If the company was a public utility at the time it entered into the Lake contract and had dedicated the impounded water to a public use, the contract is subject to regulation by the Railroad Commission, and the question whether Lake personally knew he was dealing with a public utility is immaterial.

The preliminary point to be determined is whether the evidence sufficiently supports the finding of the trial court that, prior to the execution of the contract, the water impounded by the respondent's dam had been dedicated by the company to a public use. It has been held that the filing of a condemnation action is evidence of an intention to dedicate impounded waters to such a use (*Producers' Transp. Co.* v. *Railroad Commission*, 176 Cal. 499 [169 P. 59]; *Byington* v. *Sacramento Valley West Side Canal Co.*, 170 Cal. 124 [148 P. 791]), and Lake's knowledge or lack of knowledge concerning it is immaterial.

The purpose for which a company is organized is also a factor which may be considered in determining the character of the use to which the water appropriated by the utility is to be put (*Williamson* v. *Railroad Commission*, 193 Cal. 22, 29 [222 P. 803]; *Brewer* v. *Railroad Commission*, 190 Cal. 60 [210 P. 511]; *Del Mar Water etc. Co.* v. *Eshleman*, 167 Cal. 666 [140 P. 591, 948]), and further support for the finding is found in the authorization of service extended by National City to the company, together with the fixing by the city of the rates to be charged for such service, at a date prior to the execution of the contract. (*Brewer* v. *Railroad Commission, supra*; *Palermo Land & Water Co.* v. *Railroad Commission*, 173 Cal. 380 [160 P. 228].) It is undisputed that 212 applications for water service, some of which came from non-residents of National City, had been received by the company before it entered into the contract with Lake. And the concluding provisions of each application allowing the water service to be terminated at the request of either party after a specified period has been held not to affect the public nature of the utility. (*Osborne* v. *San Diego Land & Town Co.*, 178 U.S. 22 [20 S.Ct. 860, 44 L.Ed. 961].)

Although it is true, as urged by the appellant, that a utility may reserve for private purposes a portion of the waters appropriated by it, and not already dedicated to a public use (*Allen* v. *Railroad Commission*, 179 Cal. 68, 82 [175 P. 466, 8 A.L.R. 249]; *Copeland* v. *Fairview Land & Water Co.*, 165

Cal. 148 [131 P. 119]), the record is devoid of any evidence showing any private use of the impounded waters by the company prior to the execution of the Lake contract. Upon this record, the finding of the trial court that, before entering into the contract with Lake, the company had dedicated all of its waters to a public use, is fully supported by substantial evidence.

As contended by the appellant, there is no direct evidence in the record that the dam was completed in 1888. A clipping from a newspaper published in 1888, announcing the turning on of the water supplied to the inhabitants of National City, and an account in a scientific magazine of the dam's construction, were introduced at the trial for identification only. But the contract discloses by its terms that Lake's riparian water had already been diverted by the company, and the appellant concedes in his briefs that the dam effectually impounded all of the ordinary flow of the river. The language in the contract, together with the prior receipt of applications for water service and the ordinances of National City, affords ample indirect evidence of the appropriation of the water by the company.

It is elementary that under the provisions of the California Constitution, private property may not be appropriated by a public utility without just compensation. (Const., art. I, § 14.) But a lower riparian owner may not wait until the completion by a public utility of a dam intended to impound all the waters of a stream and then enjoin the use of the dam or the impounded waters. At that time his remedy is to sue for damages in an inverse condemnation action. (*Collier* v. *Merced Irr. Dist.,* 213 Cal. 554, 563, 564 [2 P.2d 790]; *Conoway* v. *Yolo Water & Power Co.,* 204 Cal. 125, 131, 133 [266 P. 944, 58 A.L.R. 674]; *Miller & Lux* v. *Enterprise Canal etc. Co.,* 169 Cal. 415, 429 [147 P. 567]; *Gurnsey* v. *Northern Cal. Power Co.,* 160 Cal. 699, 711 [117 P. 906, 36 L.R.A.N.S. 185]; *Barton* v. *Riverside Water Co.,* 155 Cal. 509, 515 [101 P. 790, 23 L.R.A.N.S. 331]; *Crescent Canal Co.* v. *Montgomery,* 143 Cal. 248, 252 [76 P. 1032, 65 L.R.A. 940]; *Fresno etc.* v. *Southern Pacific Co.,* 135 Cal. 202, 207, 208 [67 P. 773]; *Southern California Ry. Co.* v. *Slauson,* 138 Cal. 342, 344, 345 [71 P. 352, 94 Am.St.Rep. 58].) Of course, the public utility may purchase the appropriated rights or compensate for the damages arising because of an appropriation made by it without resorting to the

courts, and the contract between Lake and the company evidences such an agreement.

By the terms of that contract, Lake, in consideration of the grant of a perpetual water right to be appurtenant to his land, waived all claims to damages because of the company's appropriation of his riparian rights. Had the consideration for this contract been an agreed amount of money, the present controversy would not have arisen. The question therefore decisive of this appeal, is whether a public utility which had already dedicated and appropriated the waters of a lower riparian owner to a public use may subsequently enter into a contract with the lower riparian owner, granting to him in exchange for his waiver of damages for the diversion of his waters, a perpetual right expressly made appurtenant to his land to receive so much of the appropriated water as is necessary for his land at a fixed monetary rate which is not subject to regulation by public authority.

At the time Lake and the water company executed their agreement, the California Constitution of 1879 provided: "The use of all water now appropriated, or that may hereafter be appropriated, for sale, rental, or distribution, is hereby declared to be a public use, and subject to the regulation and control of the state, in the manner to be prescribed by law. . . ." (Art. XIV, § 1.) By the express terms of this constitutional provision, the contract, insofar as the agreement to furnish water is concerned, was subject to subsequent regulation and control of the state. (*Williamson* v. *Railroad Commission, supra; Limoneira Co.* v. *Railroad Commission,* 174 Cal. 232 [162 P. 1033]; *Leavitt* v. *Lassen Irrigation Co.,* 157 Cal. 82 [106 P. 404; 29 L.R.A.N.S. 213]; *Law* v. *Railroad Commission,* 184 Cal. 737, 740 [195 P. 423, 14 A.L.R. 249].) The water having been appropriated and dedicated to a public use, the utility no longer had the right to reserve from its water supply any private interest so as to exclude the exercise of the public regulatory power. (*Limoneira Co.* v. *Railroad Commission, supra; Leavitt* v. *Lassen Irrigation Co., supra.*)

In this respect the rights of the parties differ from those shown in *Copeland* v. *Fairview Land & Water Co., supra.* In that action, the riparian right appurtenant to a tract of land was transferred to a holding company which simultaneously retransferred the right to the owner of the tract in consideration of the issuance to it of the entire capital stock of the corporation. Subsequently the stock was transferred to

purchasers of the lots into which the tract was subdivided. The court held that the water right so conveyed to the lot purchasers retained its riparian character. In the present action, there was no transfer by Lake of his water right to the company as a trustee, with a simultaneous retransfer to him of his riparian right in another form. On the contrary, after the intervention of the public interest by an appropriation and dedication of his water to a public use, he waived his damages for such a taking in consideration of the grant of a perpetual right to receive the water so appropriated and dedicated by the company.

Under the Public Utilities Act (Stats. 1915, p. 115; Deering's Gen. Laws, 1937, Act 6386), the Railroad Commission exercises the regulatory power of the state over the rates of and service extended by a public utility. The supplying of water to the appellant and the rate to be charged for the service by the respondent utility is subject to the action of the commission. Nevertheless, until the commission has acted to regulate the rates specified in a contract by which water is to be supplied by a public utility, the agreement made by the parties will be recognized and enforced. (*Coulter* v. *Sausalito Bay Water Co.*, 122 Cal.App. 480 [10 P.2d 780]; and see *Southern Pacific Co.* v. *Spring Valley Water Co.*, 173 Cal. 291 [159 P. 865, L.R.A. 1917E, 680]; *Fresno Canal etc. Co.* v. *Park*, 129 Cal. 437 [62 P. 87]; *Cowden* v. *Pacific Coast S. S. Co.*, 94 Cal. 470 [28 P. 873, 28 Am.St.Rep. 142, 18 L.R.A. 221].)

In the event that the commission orders the company to charge the appellant the same rate for the water supplied to him as it charges others in the vicinity, the company will thereby be excused from performing its contract with him. He would then be entitled to restitution. (*Law* v. *Railroad Commission, supra*, p. 741; and see *Ogren* v. *Inner Harbor Land Co.*, 83 Cal.App. 197 [256 P. 607].) Section 108 of the Restatement of Restitution provides: "A person who has conferred a benefit upon another in the performance of a contract or bargain with the other which the other has failed to perform is entitled to restitution . . . if the other is privileged not to perform because of supervening impossibility, in accordance with the rule stated in the Restatement of Contracts, section 468. . . ." The section referred to reads: ". . . Except where a contract clearly provides otherwise, a party thereto who has rendered performance for which the other party is excused by impossibility from rendering the agreed exchange, can get judgment for the value of what he

has rendered, less the value of what he has received, unless what he has rendered can be and is returned to him in specie within a reasonable time. . . ."

Applying these rules to the facts shown in the present action, upon any failure of the company to perform the contract caused by the supervention of public regulation, justice requires that it must compensate the appellant in the amount of the value of the riparian right taken from his predecessor in interest, together with the value of the easement for the maintenance of the water main until it was abandoned. As a credit upon such amounts, the appellant must be charged for the value of the benefits received by Lake and his successors in interest.

The finding of the trial court, fully justified by the record, that there is insufficient evidence from which it could find that the consideration for the Lake contract was adequate forecloses the appellant from securing the remedy of specific performance. The declaration of section 3391 of the Civil Code that "Specific performance cannot be enforced against a party . . . if he has not received an adequate consideration for the contract," makes adequacy of consideration a prerequisite to the granting of such relief. (*Cornblith* v. *Valentine*, 211 Cal. 243 [294 P. 1065] ; *O'Connell* v. *Lampe*, 206 Cal. 282 [274 P. 336] ; *O'Hara* v. *Wattson*, 172 Cal. 525 [157 P. 608] ; *Haddock* v. *Knapp*, 171 Cal. 59 [151 P. 1140] ; *Morrison* v. *Land*, 169 Cal. 580 [147 P. 259] ;. *Wilson* v. *White*, 161 Cal. 453. [119 P. 895] ; *Notten* v. *Mensing*, 20 Cal. App.2d 694 [67 P.2d 734] ; *Kelsey* v. *San Fernando Development Co., Inc.*, 124 Cal. App. 279 [12 P.2d 70].)

Nor is the appellant entitled to injunctive relief. The record discloses no evidence that the respondent has refused to deliver water to the appellant but only that it insists upon the payment of a higher rate than that prescribed by the contract. Until the contract rate is annulled by the Railroad Commission, the appellant may secure adequate compensation for the failure of the respondent to perform its obligations under the contract by an action for damages.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Curtis, J., Traynor, J., and Peters, J. pro tem., concurred.

Carter, J., concurred in the judgment.