[Civ. No. 761. Fourth Appellate District.—February 9, 1932.]

MILLER & LUX, INCORPORATED (a Corporation), Respondent, v. SAN JOAQUIN LIGHT & POWER CORPORATION (a Corporation), Appellant; CHOW-CHILLA FARMS, INCORPORATED (a Corporation), Intervener and Respondent.

592

Murray Bourne, W. M. Conley, Philip Conley, Mathew Conley and Conley, Conley & Conley for Appellant.

J. E. Wooley for Respondent.

Athearn, Chandler & Farmer and Frank R. Devlin and Vincent J. McGovern for Intervener and Respondent.

LAMBERT, J., *pro tem.*—This is an appeal by the defendant from a judgment granting a permanent injunction in favor of the plaintiff and intervener. The action was brought by plaintiff and respondent to enforce by injunction the terms of a contract executed some twenty years previously by plaintiff and respondent and the predecessors in interest of appellant and of intervener and respondent, and to quiet the title of respondents to the waters of the San Joaquin River and some of its tributaries, particularly the North Fork thereof, as against the appellant. The contract which involved the relative rights of the parties to the waters of the San Joaquin River was executed on the fourteenth day of June, 1909, between Miller & Lux, Incorporated, Las Animas and San Joaquin Land Company, Incorporated (a predecessor in interest of respondent Miller & Lux, Incorporated), California Pastoral & Agricultural Company, Limited, a corporation, predecessor in interest of intervener and respondent, Chowchilla Farms, Incorporated, a corporation, as parties of the first part, and San Joaquin Light and Power Company, a corporation, a predecessor in interest of appellant, as party of the second part. In its amended complaint respondent Miller & Lux, Incorporated, asks for an injunction restraining and preventing the appellant from impounding and diverting any of the waters of the San Joaquin River at any time or at any stage, or in any amount different from the times, amounts and stages specified in the agreement. The amended complaint further asks that it be adjudged and decreed that respondent Miller & Lux, Incorporated, is entitled to have all waters of

the river, other than those which appellant could store under the agreement, flow to and by plaintiff's land without interruption or interference by appellant. Chowchilla Farms, Incorporated, a corporation, successor in interest of California Pastoral & Agricultural Company, Limited, intervened in the action on behalf of plaintiff. The first amended complaint of respondent Miller & Lux, Incorporated, upon which the judgment rests, after alleging the corporate capacities of respondent Miller & Lux, and appellant, alleges in paragraph 3, the legal effect of the agreement heretofore mentioned, to be adverted to later in this opinion, as follows:

"That on the 14th day of June, 1909, plaintiff, Las Animas and San Joaquin Land Company, Incorporated, a corporation, and California Pastoral & Agricultural Company, Limited, a corporation, therein denominated the Parties of the First Part, entered into an agreement with Defendant wherein it was recited that plaintiff was the owner of a large acreage of land in the Counties of Fresno, Madera, Merced and Stanislaus, through which said land runs the main channels of the San Joaquin River, and which said land is on natural channels, branches and sloughs which head on said river upon said land of plaintiff, and run through said land and come back to the main channel or channels of said river, and the greater portion of said land borders on the main channels of said river, and said other channels, branches and sloughs, and is riparian to said river; and said agreement further recited that plaintiff has diverted and appropriated waters of said river, channels, branches and sloughs for the purpose of irrigating plaintiff's said lands, and for watering stock and for domestic and other beneficial purposes, and has used all of the water so diverted for said purposes.

"Said agreement further recited that a portion of the land owned by plaintiff was nonriparian to said river, and that on such nonriparian lands the appropriated waters have been used through various canals constructed by plaintiff for the irrigation thereof.

"Said agreement further recited that said defendant San Joaquin Light & Power Corporation desired to construct a reservoir upon the North Fork of said River, and to fill said reservoir during the period of high water from said river,

and to use the water so stored solely for power purposes, that is, for the generation of electrical power, all such water after it had been used to be returned to the regular channel of the North Fork or to the regular channel of the San Joaquin River.

"Said agreement further recited that said defendant admits that said plaintiff and said Las Animas and San Joaquin Land Company, Incorporated and said California Pastoral & Agricultural Company, Limited, and each of them, as riparian proprietors on said San Joaquin River and on its numerous branches and sloughs, and as appropriators of water from said river and said branches and sloughs, have the right to have at all times all of the water flowing in said San Joaquin River and its tributaries and branches flow as they naturally do down said river to, through and over the lands of said parties, and to and into the canals and ditches constructed and owned by said parties.

"Said agreement further recited that said defendant, before commencing the construction of its proposed reservoir, desired to have an understanding and arrangement with plaintiff and said other parties whereby said parties would make no objection to the construction of said reservoir, nor to the storing of water therein at times to be agreed upon, and at certain stages of the flow of the water in said river to be particularly enumerated and specified in order that there may be no controversy as regards the time, when, and the period of time during which, and the stages of the flow of water in the said river when the said defendant may withhold from flowing down said North Fork a portion of the waters thereof.

"That after said and other recitals, said parties entered into a formal agreement, which said agreement is now in full force and effect in all particulars, and in said agreement it was specifically provided that defendant will not at any time or in any manner during the months of April, May, June, July and August of any year, without first obtaining the written consent of plaintiff and said other parties to said agreement, withhold in any reservoir any water flowing in said North Fork, or in any of its tributaries, unless there shall be flowing in the San Joaquin River at the point where the gauge thereinafter provided for is placed in said river at the Lone Willow Slough Measuring Station three thousand (3,000) cubic feet of

water per second or over; and in the event that said defendant shall at any time be storing water in any reservoir or reservoirs on North Fork, or any of its tributaries, during any of said months of any year, and the flow of water at said Lone Willow Slough Measuring Station shall fall below three thousand (3,000) cubic feet per second, it will immediately cease to store water in any reservoir or reservoirs on said North Fork, or on any of its tributaries; and said parties further agreed that said defendant will not at any time or in any manner during the months of September, October, November, December, January, February and March of any year withhold in any reservoir any water flowing in said North Fork, or in any of its tributaries, unless there shall be flowing in the San Joaquin River at a point immediately below where the waters diverted and used by defendant are returned to said San Joaquin River fifteen hundred (1500) cubic feet of water per second or over; and in the event said defendant shall at any time be storing water in a reservoir or reservoirs on North Fork, or on any of its tributaries, during any of the said months of any year when the flow of water at said last described point shall fall below fifteen hundred (1500) cubic feet per second, it will immediately cease to store water in any reservoir or reservoirs on said North Fork, or on any of its tributaries.''

Paragraph 4 of the amended complaint alleges that pursuant to the terms of the agreement appellant constructed a reservoir at Crane Valley on the North Fork of the San Joaquin River; paragraph 5, that subsequent to the entering into of the agreement all properties of the Las Animas and San Joaquin Land Company, Incorporated, and all rights given by the contract to said company were sold to respondent Miller & Lux, Incorporated, which corporation is now the owner thereof; paragraph 6, the ownership by respondent Miller & Lux, Incorporated, of the lands described in the complaint; paragraph 7, that the North Fork and San Joaquin Rivers are natural streams; paragraph 8, the breach of the contract and invasion of the rights of respondent Miller & Lux, Incorporated, by appellant in February and March, 1929, by storing water in Crane Valley reservoir when the river was flowing less than 1500 c. f. s., as provided in the contract; paragraph 9, that respondent Miller & Lux, Incorporated, had prior to June 14,

1909, constructed a system of canals through its riparian lands at great expense for the utilization of the waters of the river San Joaquin and North Fork thereof by means of which the water was diverted to said lands and beneficially used thereon and still maintain said canals for the same purpose; paragraph 10, that appellant had threatened to continue to disregard the rights of respondent and to store water at stages when it has no contractual or other right to store, and that great and irreparable damages will result; paragraph 11, the aridity of the climate and lack of rainfall for growing crops, and unless irrigated by artificial means, is unfit for the profitable growing of crops; paragraph 12, the right of respondent Miller & Lux, Incorporated, to have the full flow of the stream, except as limited by the agreement, flow through its land, and without said water the land is unproductive; paragraph 13, that appellant claims some rights in and to the waters of the river in addition to the rights provided in the agreement and alleges that appellant has no rights except as set forth in the agreement; paragraph 14, that the acts of appellant threaten to be continuous. The complaint in intervention was along the same lines as the amended complaint of respondent Miller & Lux, Incorporated, a corporation, alleging by appropriate allegations that it had succeeded to the rights of the California Pastoral & Agricultural Company, Limited, a corporation, one of the original parties to the contract, and assigning the same reasons and asking the same relief as was asked by respondent Miller & Lux, Incorporated, in the amended complaint, and need not be further noticed, as the judgment affects both the plaintiff and intervener alike. To the plaintiff's first amended complaint and to the complaint in intervention, the appellant presented its answer wherein, and in certain amendments thereto, it proceeded by denials and by affirmative averments, to set forth in addition to what we will call the first answer, 15 separate and distinct alleged defenses to respondents' alleged cause of action. The case proceeded to trial and upon the close of respondents' case the respondent Miller & Lux, Incorporated, objected to the introduction of any evidence by the appellant in support of its answer on the ground that said answer in none of the defenses therein contained set forth anything that could constitute a defense to the cause of action stated in the amended complaint.

The intervener and respondent joined in this objection. The court sustained the objection. The respondent Miller & Lux, Incorporated, had filed a demurrer to the answer of appellant and to each defense set forth therein. The court sustained this demurrer without leave to amend, the order being general as to the whole answer. The permanent injunction was granted and the proper decree entered, limiting appellant's right to store water in accordance with the written agreement pleaded.

The question presented on this appeal is whether the court erred in refusing the defendants the right to introduce evidence in support of its answer and sustaining the demurrer. Before proceeding with this question it is necessary to have in mind the purpose, object and some of the material terms of this contract, for the breach of which this action was brought. This contract was entered into on June 14, 1909, by the parties as heretofore stated. The main purpose of the contract was to provide for the storage of waters taken from the North Fork of the San Joaquin River. It was recited in the contract that the parties of the first part, that is, Miller & Lux, Incorporated, a corporation, Las Animas and San Joaquin Land Company, Incorporated, a corporation, and California Pastoral & Agricultural Company, Limited, a corporation, were the owners of a large acreage of land riparian to said San Joaquin River, although the land was not described. It was the purpose of the contract that the waters would be stored by the San Joaquin Light and Power Company, a corporation, and after use in generating electric power, returned to the San Joaquin River. The first portion of the contract that is material here is that which relates to the time and condition of the water when reservoirs may be filled, reading as follows:

"Time and Condition of Water When Reservoirs may be Filled.

"The party of the second part agrees that it will not at any time or in any manner during the following months of any year—April, May, June, July and August, without first obtaining the written consent of the parties of the first part hereto, withhold, in any reservoir, any water flowing in said North Fork, or in any of its tributaries, unless there shall be flowing in the San Joaquin River, at the point

where the gauge hereinafter provided for is placed in said river at the 'Lone Willow Slough' measuring station hereinafter referred to, three thousand (3000) cubic feet of water per second or over, and in the event the party of the second part shall at any time be storing water in any reservoir or reservoirs on North Fork, or on any of its tributaries, during any of said months of any year, and the flow of water at said 'Lone Willow Slough' measuring station shall fall below three thousand cubic feet per second, it will immediately cease to store water in any reservoir or reservoirs on said North Fork or on any of its tributaries; nor will said party of the second part at any time or in any manner during the months of September, October, November, December, January, February and March of any year, withhold, in any reservoir any water flowing in said North Fork, or in any of its tributaries, unless there shall be flowing in the San Joaquin River at the point where the gauge hereinafter provided for, and to be placed in said river at a point immediately below where the waters diverted and used by the second party are returned to said San Joaquin River, fifteen hundred (1500) cubic feet of water per second or over; and in the event the party of the second part shall at any time be storing water in reservoir or reservoirs on North Fork, or on any of its tributaries, during any of said months of any year, and the flow of water at said last-described measuring station shall fall below fifteen hundred cubic feet per second, it will immediately cease to store water in any reservoir or reservoirs on said North Fork or on any of its tributaries.''

Another part to be considered is as follows:

"It is the understanding and agreement between the parties hereto that the said parties of the first part, Miller & Lux, Incorporated, and the Las Animas and San Joaquin Land Company, have heretofore entered into an agreement with John S. Eastwood and others with respect to the reservoiring of certain waters of said San Joaquin River on Big Creek, a tributary of said river, and it is the understanding and intention beween the parties that the reservoiring and withholding of the waters of said San Joaquin River or of said tributary under said agreement shall not affect the rights of the parties hereto nor the stages of said river at which, nor the conditions or provisions hereof under

which, the party of the second part may withhold and reservoir the waters of said North Fork of said San Joaquin river and its tributaries. And it is also mutually understood and agreed that nothing herein contained is intended to or shall prohibit or prevent the first parties, or others acting under them, or with their consent, from reservoiring or withholding the waters of the San Joaquin river, or any of its tributaries, at any place above the point of return of the waters of said river thereto by the second parties to this agreement, or upon any tributaries of said river, whether such tributaries flow into said river above or below such point of return of the waters of said river by the second parties, as provided in said contracts; and the measurement and flow of said river as in said contracts provided with respect to the stages thereof at which the second parties may reservoir its waters, shall control and govern whether or not the first parties, or others acting under them shall so withhold or reservoir such waters; but the first parties shall not withhold, authorize or consent to the withholding or reservoiring of any waters of said river, or its tributaries, that flow into and supply the reservoirs to be constructed by the second parties, or by them constructed under this agreement.''

The contract deals minutely with matters of construction and installation of the works provided to be constructed and maintained, time, places and manner of measurement of water, etc., but only those parts material to the discussion here have been set forth.

Taking up now the question of pleadings, the answers of the appellant are quite voluminous and cannot in this opinion be any more than briefly referred to. In testing these pleadings of the appellant the first rule to have in mind is that the demurrer to the answer or the objection to the admission of evidence thereunder admitted the truth of all issuable facts pleaded in the answer and eliminated all allegations in the amended complaint denied by the answer or as stated in *Sheward* v. *Citizens' Water Co.*, 90 Cal. 635, at 639 [27 Pac. 439, 440] : ''The demurrer to the answer admits not only the facts alleged therein, but also for the purpose of determining the sufficiency of the answer, that the facts alleged in the complaint, which are denied in the answer, form no part of the plaintiff's cause of action, and are not to be regarded by the court.''

The next rule is that each so-called defense must be considered separately without regard to any other defense. No matter how illogical this may at times seem, it was the rule at common law and is the rule by our code (sec. 441, Code Civ. Proc.). In *Banta* v. *Siller,* 121 Cal. 414, at 418 [53 Pac. 935, 936], the Supreme Court quotes with approval from *Buhne* v. *Corbett,* 43 Cal. 264: "A party defendant in pleading may plead as many defenses as he may have. If a plea or defense separately pleaded in an answer contain several matters, these should not be repugnant or inconsistent in themselves. But the plea regarded as an entirety, if it be otherwise sufficient in form and substance, is not to be defeated or disregarded merely because it is inconsistent with some other plea or defense pleaded." Also in sustaining a demurrer or an objection to the admission of evidence, the ruling must be made on the pleadings alone, without regard to any evidence in the case; and this would exclude the court from considering the stipulation regarding the riparian character of part of the lands of respondents, in this case upon which respondents so strongly rely. The stipulation was no part of the pleadings. It took the place of evidence and was read by plaintiff, and while it would eliminate the necessity of a finding on the matters stipulated to had the case been decided on the merits, it could not be considered by the court in ruling on the objection that no evidence was admissible under the pleadings, or, in ruling upon a general demurrer interposed by plaintiff to appellant's answer. Aside from this, however, the record shows that it contains a reservation of the extent and priority of the rights of said parties in and to the waters of said San Joaquin River for adjudication by the court.

This leaves two questions to be answered with regard to these pleadings. First, was any allegation in the amended complaint which was material to the plaintiff's cause of action, or to state it another way, which the plaintiff was required to prove, denied by any of the defenses, though admitted in others? Second, did any of these defenses interposed by appellant, irrespective of what might be admitted in others, allege any facts that would constitute a defense? We think both of these questions should be answered in the affirmative. In discussing the ques-

tion, it is well also to keep in mind the familiar rule that a general demurrer or objection to the admission of evidence under a pleading on account of its insufficiency as a pleading does not reach facts defectively stated or those set forth by way of inference or argument, but only the entire absence of any essential fact. (*Lattin* v. *Hazard*, 85 Cal. 58, at 63 [24 Pac. 611].) ■ Also that any inconsistency or ambiguity in a pleading caused by a conflict between a direct allegation in the pleading and an exhibit attached to it and made a part thereof can only be reached by special demurrer. (*Mendocino County* v. *Morris*, 32 Cal. 145; *Palmer* v. *Lavigne*, 104 Cal. 30 [37 Pac. 775]; *Blasingame* v. *Home Ins. Co.*, 75 Cal. 633 [17 Pac. 925]; *San Francisco Sulphur Co.* v. *Aetna Indemnity Co.*, 11 Cal. App. 695 [106 Pac. 111]; *Linz* v. *McIver & Becker*, 29 Cal. App. 470 [156 Pac. 1000].)

■ The first answer denied the construction placed upon the contract in the amended complaint and denied the averment as to the capacity of the reservoir constructed by the power company; denied that the plaintiff became the successor in interest to Las Animas and San Joaquin Land Company, Incorporated; denied the ownership by respondent Miller & Lux, Incorporated, of the lands described in exhibit A attached to the complaint; denied that the lands are riparian; denied that the appellant is not entitled to store the waters of the San Joaquin River in Crane Valley Lake; denied that the plaintiff built canals as alleged in the complaint for utilization of the waters of San Joaquin River; denied that the appellant has violated or will violate any rights of the plaintiff; denied that great or irreparable or any damage will result from continued storage of water by the defendant; denied the allegation in the complaint that the soil on the lands of respondents is unfit for cultivation or the growing of profitable crops without the waters of the San Joaquin River; and denied that without this irrigation the land would be nonproductive; denied the rights of respondents to take or divert or use all the waters of the river for the irrigation of its lands; alleged that it has certain additional rights and claims to the use of the waters of the river other than those specified in the written contract; denied that pecuniary damages will not compensate plaintiff for any injuries it might have suffered. Sim-

ilar denials are contained in the answer to the complaint in intervention. The contract in controversy was attached to the answer, marked exhibit A and made a part thereof, and the appellant averred that it contained a complete statement of all the terms, provisions and conditions of said agreement as it existed at the time of the execution of the agreement twenty years prior thereto. It is true some admissions in the contract are inconsistent with the direct denials, but as heretofore shown, this could only be reached by a special demurrer. ■ It is true the answer, by means of the exhibit, admitted the contract and it failed to deny one breach thereof, but it does not necessarily follow that an injunction would follow as a matter of course for this reason. In the case of *Willis* v. *Lauridson,* 161 Cal. 106, at 117 [118 Pac. 530, 535], the Supreme Court quotes with approval from the case of *St. Louis S. F. M. Co.* v. *Sanitary S. F. M. Co.,* 161 Fed. 725 [88 C. C. A. 585] : "To issue an injunction is the exercise of a delicate power requiring great caution and sound discretion and rarely, if ever, should be exercised in a doubtful case. 'The right must be clear, the injury impending and threatened, so as to be averted only by the protecting preventive process of injunction.' " The granting or denial of an injunction is a matter within the sound discretion of the court but the real equities of the case should be considered before action taken. (*Frost* v. *City of Los Angeles,* 181 Cal. 22 [6 A. L. R. 468, 183 Pac. 342].) However, laying aside the question of pleading and assuming for the purpose of argument only that it was admitted in the contract that respondents were riparian owners, it still would not follow as a matter of right that an injunction should issue to restrain the diversion, storage or use of the water by the appellant. There is only one breach alleged and while the amended complaint alleges a threatened continuous breach, this is denied by the answer. ■ The doctrine that a riparian owner has a right to have the waters of the stream flow in its natural and ordinary course past his lands is not absolute. It has been allowed in most cases but denied in some, depending somewhat upon the particular circumstances of each case. For a very able discussion and collection of cases on the subject see *Herminghaus* v. *Southern California Edison Co.,* 200 Cal. 81 [252 Pac. 607]. (See, also, art. XIV,

sec. 3, of the Constitution of the state of California, adopted November 6, 1928.) The amended complaint, stripped of the matters denied, leaves only the contract and one breach thereof, and this alone, under the authorities, is not sufficient to support the injunction in this case. ██ By an amendment to the first answer to the first amended complaint, appellant pleaded as follows:

"In this connection, however, defendant alleges that there would have been flowing in said river at the point referred to in said agreement, at certain times during said months, more than fifteen hundred (1500) cubic feet of water per second, except that by the contracts of plaintiff with other persons, including Southern California Edison Company, a corporation, and by permission granted by plaintiff to Southern California Edison Company, a corporation, said Southern California Edison Company did reservoir and store waters of the San Joaquin River on branches and channels of said river above the point where the North Fork of the San Joaquin River enters the main channel of said San Joaquin River, without the consent or acquiescence of defendant, and thereby caused the said river to flow, at the point referred to in said agreement, at a lesser flow than fifteen hundred (1500) cubic feet per second, and defendant further avers that by virtue of various and sundry contracts made and entered into between plaintiff and other persons, including Southern California Edison Company, a Corporation, the said plaintiff has, for many years last past, without the consent or acquiescence of this defendant, permitted and allowed said other persons, including said Southern California Edison Company, to impound, reservoir, detain and store substantial quantities of waters of the said San Joaquin River above the point where the waters of the North Fork of the San Joaquin River enter the main channel thereof, and that thereby and on account thereof the flow of said river, at the points designated in said agreement (Exhibit 'A'), for the measurement of the flow of said river, has been and is substantially reduced, and defendant avers that the flow of said river thus prevented with the acquiescence and consent of plaintiff as aforesaid, should be taken into account by the court in ascertaining what the flow of the river would otherwise be at the point mentioned in said agreement; and defendant further avers

that by reason of said facts, said plaintiff is estopped to maintain that the flow of said river at the point mentioned in said agreement, notwithstanding such detention, reservoiring and storage by said other parties, should amount to three thousand (3,000) cubic feet per second during the months of April, May, June, July and August, and fifteen hundred (1500) cubic feet of water per second during the months of September, October, November, December, January, February and March."

This plea presented an issue and could not be ignored by the court. Obviously if this plea is true the respondents would be in no position to complain about the breach. A fair construction of that part of the contract relating to the storage of waters by other parties we think is limited by the last part of the provision which we have heretofore quoted as follows: "But the parties shall not withhold, authorize or consent to the withholding or reservoiring of any waters of said river or its tributaries that flow into and supply the reservoirs to be constructed by the second parties or by them constructed under this agreement." Any other construction would enable respondents to completely nullify the contract. So if this plea is true, and it had to be taken as true, when the court made its ruling, respondents, in complaining of the breach, would be taking advantage of their own wrong, directly contrary to the provisions of section 3517 of the Civil Code. Enough has been shown to demonstrate that the first answer presents issuable facts which require a trial on the merits.

The second defense pleaded with great detail the intervention of a public use, that is, this defense shows that the appellant is engaged in the sale and distribution of electric power on an extensive scale, in several counties and many cities in the state of California. It shows that the contract provided that work, in building facilities to generate and handle the power, was to be established within three years after the contract was entered into and that much of this work had been done after that time. The appellant claims by this defense that it has been violating the contract by storing water for many years and that the respondents have stood by while the defendants violated the contract with full knowledge, and that public rights having intervened, the respondents are estopped to claim a right

to an injunction and should be left to damages in an action at law. We think that there is enough in this plea to require the consideration of evidence on both sides of the question. The effect of the intervention of a public use and the rules regarding it have been stated in many cases. In the recent case of *Conaway* v. *Yolo Water & Power Co.*, 204 Cal. 125, at 133 [58 A. L. R. 674, 266 Pac. 944, 947], the court said:

" 'In substance, the doctrine established by these decisions, though not, strictly speaking, the doctrine of prescription, at least amounts to this: That where a person has suffered property belonging to him and under his control to be taken and devoted to a public use by one engaged in administering such use, and the matter has gone so far that the beneficiaries thereof rely on its continuance and adjust their affairs accordingly, such owner having knowledge thereof and making no objection or protest, this conduct will be regarded by the courts as a dedication by such owner of the property to the particular public use, and he cannot thereafter interrupt nor prevent the same, his only remedy being to seek compensation for the property he has thus allowed to be taken, or as indicated in the Newport case.' (*Miller & Lux* v. *Enterprise Canal etc. Co.*, 169 Cal. 415, 429 [147 Pac. 567, 573]; see, also, *Gurnsey* v. *Northern California Power Co.*, 160 Cal. 699, 711 [36 L. R. A. (N. S.) 185, 117 Pac. 906].) "

The same doctrine is announced and approved in the case of *Sutro Heights Land Co.* v. *Merced Irr. Dist.*, 211 Cal. 670 [296 Pac. 1088]. In *Collier* v. *Merced Irr. Dist.*, 213 Cal. 554 [2 Pac. (2d) 790, 793], wherein an injunction was denied, and damages allowed instead, in an action to enjoin interference with plaintiff's riparian rights and for damages, where it appeared that defendant irrigation district had obtained permission to construct a dam and store a certain number of acre-feet per year, and that for a period of five or six years plaintiff with full knowledge of the erection of the dam and defendant's intended use thereof, made no objection, even though defendant had only stored a maximum of 296,000 acre-feet of water in one year—much less than the project called for—the Supreme Court held that a public use had intervened as to the whole of the project; also affirmed the doctrine of *Conaway* v. *Yolo Water &*

*Power Co.,* 204 Cal. 125 [58 A. L. R. 674, 266 Pac. 944], and said:

" 'It is perfectly true that not even a corporation possessing the power of eminent domain may under the constitution (art. I, sec. 14) take or damage private property without first making adequate compensation. But this right may be waived by the owner and in order to prevent the obstruction of progress he must be held to diligence in asserting his right as against a concern administering such a public use. If he allows his property right to be invaded and either taken or damaged for a public use and the public right has so far intervened as to justify the belief that objection has been waived, then in law the property right so taken or damaged is to that extent dedicated to the public use.' (*Conaway* v. *Yolo Water & Power Co.,* 204 Cal. 125, 131 [58 L. R. A. 674, 266 Pac. 944, 946].)

The court also distinguished the case from *Herminghaus* v. *Southern California Edison Co.,* 200 Cal. 81 [252 Pac. 607], by pointing out that the injunction in the Herminghaus case was not against existing reservoirs nor against the filling and refilling of them during a season, but was against the future use of water in an unfinished and unused set of reservoirs existing in mere contemplation. Respondents do not question this doctrine but attempt to distinguish these cases from the case at bar in that the persons gaining the right in some of the cases relied on by appellant were trespassers, but it seems to us that this is a distinction without a difference, for if the appellant did as it alleges it did, that is, violate this contract for many years, it would be a wrongdoer so far as the water it diverted and stored when it was not allowed to do so by the contract. The appellant pleads an open violation of the contract with full knowledge of respondents, and their failure to protest. True, as between the parties this might not create any estoppel (*Lux* v. *Haggin,* 69 Cal. 255, at 266 [4 Pac. 919, 10 Pac. 674]), but the contention here is, and the basis of estoppel is, that the right of the public has intervened and that therefore the case is brought within the doctrine of the cases just cited. ▮ By an amendment to the amended answer the appellant also pleaded a waiver of certain provisions of the contract, that is, as to the times when and the amount of the flow in the river before any storage waters could be taken out. Respondents contend that under sec-

tion 1698 of the Civil Code, which provides that "a contract in writing may be altered by a contract in writing or by an executed oral agreement and not otherwise", the provisions of the contract could not be waived except in the manner provided by the code. This does not necessarily follow. In 27 R. C. L., at page 906, it is said:

"The doctrine of waiver, from its nature, is applicable, generally speaking, to all rights or privileges to which a person is legally entitled, whether secured by contract, conferred by statute, or guaranteed by the constitution, provided such rights or privileges rest in the individual, and are intended for his sole benefit."

In *Morton* v. *Albers Bros. Milling Co.*, 66 Cal. App. 391, 397 [226 Pac. 809, 811], it is said:

" . . . there seems to be authority for the proposition that section 1698 does not prevent a valid oral waiver of a written provision inserted for the benefit of the party waiving it. . . . "

In the opinion written by Gilbert, J., in *Fairbanks, Morse & Co.* v. *Nelson*, (C. C. A.) 217 Fed. 218, 221, the question of whether an oral waiver of a provision of a written contract is possible in California by reason of section 1698 of the Civil Code is carefully considered and answered in the affirmative. In the opinion it is said:

"Section 1698, Civil Code of California, provides: 'A contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise.'

"It is urged that by the evidence introduced by defendant, and the finding of the court thereon the written contract between the parties was altered by means of parol testimony. But in our opinion the evidence and finding do not show an alteration of the contract, but only a waiver by the plaintiff of one of its provisions. That this can be done by parol is established by decisions of the Supreme Court of California. In *Knarston* v. *Manhattan Life Ins. Co.*, 140 Cal. 57 [73 Pac. 740], the action was brought to recover upon a policy of life insurance which contained the usual forfeiture clause, and the defense was that the policy had been forfeited prior to the death of the assured by his failure to make payment of a semi-annual premium. But it was shown that the assured secured from the officers of the company extensions of time within which to make the payment, and that before the expiration of the last exten-

sion he was killed in a railroad accident. The court held that the extension of time might be proven by parol testimony, and that the effect of the evidence was not to vary the terms of the policy, but to show that the company had waived one of the conditions in its favor. Said the court:

" 'The provisions of the Code, as well as the stipulation for a forfeiture in the policy, were equally matters of benefit to the company, and it is the rule that not only provisions in a contract may be waived by the party for whose benefit they are inserted, but that he may also waive statutory and even constitutional provisions, under which he may derive a benefit.'

"The court quoted from Broom's Legal Maxims, 547, the following:

" 'It is a well-settled maxim that a party may waive the benefit of any condition or provision made in his behalf, no matter in what manner it may have been made or secured.' " (See, also, *Conaway* v. *Yolo Water & Power Co., supra.*)

We think the court should have heard the evidence on this plea. The third plea sets up adverse possession or title by prescription. It is a complete plea in itself and could not be reached by a general demurrer, it being sufficient in form. (*Churchill* v. *Louie,* 135 Cal. 608, at 610 [67 Pac. 1052] ; *Alta Land etc. Co.* v. *Hancock,* 85 Cal. 219 [20 Am. St. Rep. 217, 24 Pac. 645] ; *Pacific Gas etc. Co.* v. *Crockett etc. Co.,* 70 Cal. App. 283, at 291 [233 Pac. 370] ; *Fleming* v. *Howard,* 150 Cal. 28 [87 Pac. 908].)

 The fourth defense sets up the right to store water as a riparian owner. This defense is not good in law as to seasonable storage (*Herminghaus* v. *Southern California Edison Co., supra*), but it is as to the determination of the riparian rights of defendant, if any, on the San Joaquin River, and of course a riparian owner has the right to divert and use water for the manufacture of electric power (*Mentone Irr. Co.* v. *Redlands etc. Co.,* 155 Cal. 323, at 327 [17 Ann. Cas. 1222, 22 L. R. A. (N. S.) 382, 100 Pac. 1082] ). The contract of 1909 reserved its riparian rights held by it apart from the contract.

 The fifth defense sets up certain early appropriations of water on the San Joaquin River by various persons, and alleges that the defendant has succeeded to the rights

of the original appropriators, and alleges that plaintiff has no rights in or to the waters of the San Joaquin River or its tributaries, superior to the rights of the said appellant. This is a bold statement, but nevertheless presents an issue.

The matters set up in the sixth defense relate to storm, enemy or vagrant waters, that is, the flow at time of freshets or unexpected rainfall, and while the contract permits the storage of "flood waters", it would seem the defendant has a right to have this matter adjudicated. The waters are part of the river and respondents claim all water in the river except as limited by the contract. While riparian rights do not inhere in "flood waters" (*Fall River Valley Irr. Dist.* v. *Mt. Shasta Power Corp.*, 202 Cal. 56, 64 [56 A. L. R. 264, 259 Pac. 444]), we think the appellant was entitled to an adjudication of its rights in regard to the flood waters, having presented the issue.

The matters set up in the seventh defense relate to Kings River and are not involved in this case.

In the eighth defense it is alleged that the United States owns certain lands through which the San Joaquin River flows, and that the rights of the United States in said lands are superior to the rights of private land owners below and also sets up the Federal Water Power Act. It is alleged that after the passage of this act the appellant made application to the federal power commission for licenses for the construction, maintenance and operation of the works on the Kings River. It is then alleged that licenses were granted by the commission in the year 1925. It is further alleged that the secretary of agriculture, in 1915, granted appellant permission to occupy certain lands of the United States, in construction, maintenance and operation of the Crane Valley system of works. It is further alleged that appellant is the instrumentality and agency of the United States in the development of power on the San Joaquin River, on Kings River and public lands, and that the rights of the United States are paramount and superior to the claims of respondents. What the United States' rights are it is not necessary to decide—though it could not take another's property without compensation, it does not appear that it has taken or attempted to take any water belonging to respondents and transfer it to appellant. This defense therefore presents no issue.

■ The ninth defense was not good in law, merely setting up the navigability of the San Joaquin River and the Federal Water Power Act approved August 8, 1917, and for other purposes approved June 10, 1920, volume 41, Statutes at Large, page 1063, and alleging that the Federal Water Power Act was passed partially in aid of navigation and that appellant is a licensee of federal power commission for certain purposes. This plea fails for the same general reasons as the eighth defense. In *Henry Ford & Son, Inc.*, v. *Little Falls Fibre Co.*, 280 U. S. 369 [74 L. Ed. 483, 50 Sup. Ct. Rep. 140], which case involved a contest between a riparian and a licensee of the federal government, the licensee was required to deliver a portion of the power for the lighting and operation of the existing government lock and a second projected lock at the federal dam, which are instrumentalities of navigation. At page 141 (of 50 Sup. Ct. Rep.) the court said:

"It is argued that Congress, by the Federal Water Power Act, has authorized the commission to develop navigation and for that purpose to establish obstructions in navigable waters, and, subject only to the constitutional requirement of compensation for property taken, its power when so exercised is supreme; that the present exercise of that power does not amount to a taking of the respondent's property for the reason that it does not appear that the obstruction has so raised the water as to flood the respondents' land, and any right of theirs recognized by the State and asserted here to have the river flow in its natural manner without obstruction, is subordinate to the power of the National Government exerted by the Commission through its licensee, whose action, so far as it affects respondent's water power, is *damnum absque injuria.*"

The court then examined the respondent's contentions, and on the same page said:

"But in the view we take of the application of the Federal Water Power Act to the present case, it is unnecessary to decide all the issues thus sharply raised. Whether the commission acted within or without its jurisdiction in granting the license, and even though the rights which the respondents here assert be deemed subordinate to the power of the National Government to control navigation, the present legislation does not purport to authorize a licensee of

the Commission to impair such rights recognized by State law without compensation. Even though not immune from such destruction, they · are, nevertheless, an appropriate subject for legislative protection.''

And in *Palmer* v. *Railroad Com.*, 167 Cal. 163, at 168 [138 Pac. 997, 999], it is said:

''The United States, with respect to the lands which it owns in this State, is a riparian proprietor as to the streams running through such lands. It is only by virtue of that fact that it has any right or power of disposition over the waters thereof; and its right and power in that respect is no greater and no less than that of any other riparian proprietor.'' (See, also, *Southern California Edison Co.* v. *Amelia Herminghaus, etc.*, 275 U. S. 487 [73 L. Ed. 387, 48 Sup. Ct. Rep. 27]; *Fox River Paper Co.* v. *Railroad Com.*, 274 U. S. 651 [71 L. Ed. 1279, 47 Sup. Ct. Rep. 669].)

The tenth defense is likewise of no avail, stating that a portion of the land of respondent is swamp and overflowed land, title to which land was derived from the United States by virtue of the so-called Arkansas Act, and alleges that in storing the waters in the reservoirs appellant is ameliorating the swampy and overflowed condition of the land. It seems that riparian rights attached to swamp and overflow lands is the same as any other lands. In the case of *California Pastoral etc. Co.* v. *Enterprise etc. Co.*, 127 Fed. 741, the United States Circuit Court said on page 742, referring to the riparian doctrine: ''Reclaimed lands although originally swamp and overflow, within the meaning of the Act of Congress September 28, 1850, C. 84, 9, Statute 519, are as much subject to said doctrine (of riparian rights) as any other lands.'' (Citing *Lux* v. *Haggin, supra.*) Other cases are to the same effect.

Likewise there is nothing in the eleventh defense. It merely sets up the fact that the San Joaquin River is navigable from San Francisco Bay to Sycamore Point. This does not affect riparian rights. (*Turner* v. *James Canal Co.*, 155 Cal. 82 [132 Am. St. Rep. 59, 17 Ann. Cas. 823, 22 L. R. A. (N. S.) 401, 99 Pac. 520]; *Heilbron* v. *Canal Co.*, 75 Cal. 426 [7 Am. St. Rep. 183, 17 Pac. 535].)

In the twelfth defense it is again asserted that the San Joaquin River is navigable and that the United States

is an indispensable party to this suit. There is nothing in this contention. (*Henry Ford & Son, Inc.,* v. *Little Falls Fibre Co., supra.*)

The thirteenth, fourteenth and fifteenth defenses involve the statute of limitations, and as the pleas are in proper form and in accordance with the code they raise an issue which it requires findings to dispose of properly. In *E. Clemens Horst Co.* v. *Tarr Min. Co.*, 174 Cal. 430, at 438 [163 Pac. 492, 495], the court said:

"In an action by the riparian owner to establish his riparian rights, an answer by the defendant that the action is barred by the statute of limitations, by reference to the appropriate section of the Code of Civil Procedure, is a sufficient pleading of the prescriptive right to the quantity of water claimed by the defendant, and justifies the taking of evidence and the making of findings with respect to such prescriptive right (*Alhambra etc. Co.* v. *Richardson,* 72 Cal. 598, 600 [14 Pac. 379]; *Churchill* v. *Louie,* 135 Cal. 608, 610 [68 Pac. 1052]). Consequently, the court should have made findings relating to these several claims of water rights by the defendants, notwithstanding the general character of the answer."

The matters set up in the sixteenth defense are covered by other pleas and are insufficient in themselves to present an issue, containing nothing but conclusions. There was no error in sustaining the demurrer to that count.

In holding certain defenses herein ineffectual, we are not to be understood as holding that some of the matters therein may not be admissible incidentally under other pleas herein held valid. What we hold is that, standing alone, they do not constitute defenses.

We have thus considered the contentions of the respective parties as to these various pleas, and while we have not discussed all of the cases cited by the parties or all the matters raised by them, they have all been considered, and we have arrived at the conclusion that the court erred prejudicially in sustaining the demurrer to all of these defenses and refusing to hear any evidence.

The judgment is reversed and the case remanded to the court below for a trial on the merits. The trial court is directed to overrule the demurrers to the first answer and to

the second, third, fourth, fifth, sixth, thirteenth, fourteenth and fifteenth separate defenses.

Barnard, P. J., and Marks, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 7, 1932, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 8, 1932.

Preston, J., Curtis, J., and Langdon, J., dissented.