[Civ. No. 1304. Fourth Appellate District.—January 29, 1934.]

MILLER & LUX INCORPORATED (a Corporation), Respondent, v. SAN JOAQUIN LIGHT & POWER CORPORATION (a Corporation), Appellant; CHOWCHILLA FARMS, INC. (a Corporation), Intervener and Respondent; THE PINES, INC. (a Corporation), Intervener and Appellant.

Thomas J. Straub, W. R. Dunn and Conley, Conley & Conley for Appellant.

Everts, Ewing, Wild & Everts, Dan F. Conway and M. K. Wild for Intervener and Appellant.

J. E. Woolley and Vincent J. McGovern for Respondent.

Athearn, Chandler & Farmer and Frank R. Devlin for Intervener and Respondent.

BARNARD, P. J.—In this action the plaintiff seeks to enjoin the defendant from storing waters of the North Fork of the San Joaquin River other than in accordance with the terms of a certain contract entered into on June 14, 1909, between the predecessors of the plaintiff and of Chowchilla Farms, Inc., as first parties, and the predecessor of the defendant as second party. Chowchilla Farms, Inc., intervened on behalf of the plaintiff. The plaintiff and Chowchilla Farms, Inc., will be hereinafter referred to as the respondents, and the defendant will be referred to as the appellant. Under the contract referred to the appellant was given the right to store certain waters of the North Fork of this river, the stored waters to be used for the development of electric power and then released under certain conditions. The North Fork is a tributary or branch of the San Joaquin River, is quite short as compared with that portion of the main river lying above the junction of the two, and lies in general at a much lower elevation than the upper reaches of the main river. The general watershed draining into the North Fork is considerably smaller in area than that feeding the main river above the junction, and the latter is fed by more numerous and larger tributaries than is the former. As against the appellant the respondents claim a right to the uninterrupted flow of the San Joaquin River in connection with the irrigation of large tracts of land

owned by them, except as this right is limited by the contract referred to.

In a general way and briefly, it may be stated that this contract of June 14, 1909, recognized the riparian and appropriative rights of the respondents in the waters of the San Joaquin River and that the appellant had theretofore maintained a small reservoir on the North Fork and had diverted and used certain water for the generation of electric power, later discharging the waters into the main channel of the river a short distance below the mouth of the North Fork. It then provided that the appellant might construct other reservoirs on the North Fork and use the stored waters for the development of electric power only, returning the same to the channel of the North Fork or of the main river. It contained elaborate provisions for measuring the flow of the main river at a point just below the point where the waters stored by the appellant were to be returned to the river and also at a point some miles downstream and just above the place where waters were diverted to the lands of the respondents. It also provided that without the consent of the other parties the appellant would not store waters of the North Fork during the period from April 1st to August 31st of any year, unless at least 3,000 cubic feet of water per second was flowing in the river at the second point of measurement above referred to, and would not store such waters during the remaining months of the year unless at least 1500 cubic feet of water per second was flowing in the river at the point of measurement first mentioned.

Among other things, the complaint set forth the general provisions of the contract of June 14, 1909, and alleged that during the months of February and March, 1929, the appellant breached the agreement by storing water when at all times during those months less than 1500 cubic feet of water per second was flowing in the river at the appropriate point of measurement; that the appellant had threatened to continue to store water at times and stages of the river when it had no contractual or other right to store the same; and that great and irreparable damage will result from the acts of the appellant. The prayer was for an injunction preventing the appellant from storing waters of the North

Fork except as provided for in the agreement of June 14, 1909.

The answers, in addition to the denials contained therein, set up and alleged some sixteen separate defenses. On a former appeal (120 Cal. App. 589 [8 Pac. (2d) 560]), it was held that certain of these defenses raised issues and required the taking of evidence. After the decision on the former appeal The Pines, Inc., intervened on behalf of the appellant, setting forth various claims which it is unnecessary to here consider under the view we take of the other issues involved.

After a trial on the merits the court found that in pursuance of the contract of June 14, 1909, the appellant had constructed certain works including a large storage reservoir on the North Fork; that the respondents are entitled to have certain waters of the San Joaquin flow through their lands except as limited by the agreement of June 14, 1909; that during February and March, 1929, the appellant stored a large quantity of water to which the respondents were entitled and at a time when less than 1500 cubic feet of water per second was flowing in the San Joaquin River at the point of measurement provided for in the contract; that at various times the appellant had stored water when it had no right to store under the terms of the agreement; and that the appellant had threatened to continue to store the waters of said river irrespective of the limitations imposed upon it by the terms of the contract of June 14, 1909, at times when it had no contractual or other right to store the same and at times and stages when such storage would violate the right of the respondents. The court drew the conclusion of law that the respondents were entitled to a decree enjoining and restraining the appellant from storing any waters from the North Fork of the San Joaquin River "except as provided for in said agreement of June 14, 1909". A judgment was thereupon entered restraining the appellant from withholding any water flowing in the North Fork or any of its tributaries, without first obtaining the written consent of the respondents, unless there shall be flowing in the San Joaquin River at least 3,000 cubic feet of water per second or 1500 cubic feet of water per second, respectively, in accordance with the months of the year during which those respective limits were to govern under

the terms of the contract. From this judgment this appeal was taken.

It will be noted that this action is based on the contention that the appellant has only such right of storage on the North Fork as it acquired under the contract of June 14, 1909; that it has violated the terms of that contract by storing water at stages of the river when storage is prohibited thereby; and that it should be enjoined from storing water in the future other than in strict compliance with the same. Correspondingly, the court found that this contract prohibited the appellant from storing water unless certain fixed quantities of water were flowing in the main river at certain definite points during particular seasons of the year, that the appellant had violated the contract by storing water at times when the required amount of water was not flowing in the main river, and enjoined the defendant from storing at any time when the flow in the river was less than the fixed amount found requisite at certain times and places. This brings us to what we regard as the decisive issue involved on this appeal, namely, the matter of the interpretation of certain portions of the contract of June 14, 1909, and the effect of these provisions on the appellant's right to store water on the North Fork at times when the flow in the main river at the points designated in the contract is less than 3,000 c.f.s. or 1500 c.f.s. during respective seasons of the year.

As one of its defenses the appellant alleged as follows:

"In this connection, however, defendant alleges that there would have been flowing in said river at the point referred to in said agreement, at certain times during said months, more than fifteen hundred (1500) cubic feet of water per second, except that by the contracts of plaintiff with other persons, including Southern California Edison Company, a corporation, and by permission granted by plaintiff to Southern California Edison Company, a corporation, said Southern California Edison Company did reservoir and store waters of the San Joaquin River on branches and channels of said river above the point where the North Fork of the San Joaquin River enters the main channel of said San Joaquin River, without the consent or acquiescence of defendant, and thereby caused the said river to flow, at the point referred to in said agreement, at a lesser flow

than fifteen hundred (1500) cubic feet per second, and defendant further avers that by virtue of various and sundry contracts made and entered into between plaintiff and other persons, including Southern California Edison Company, a corporation, the said plaintiff has, for many years last past, without the consent or acquiescence of this defendant, permitted and allowed said other persons, including said Southern California Edison Company, to impound, reservoir, detain and store substantial quantities of waters of the said San Joaquin River above the point where the waters of the North Fork of the San Joaquin River enter the main channel thereof, and that thereby and on account thereof the flow of said river, at the points designated in said agreement (Exhibit 'A'), for the measurement of the flow of said river, has been and is substantially reduced, and defendant avers that the flow of said river thus prevented with the acquiescence and consent of plaintiff as aforesaid, should be taken into account by the court in ascertaining what the flow of the river would otherwise be at the point mentioned in said agreement; and defendant further avers that by reason of said facts, said plaintiff is estopped to maintain that the flow of said river at the point mentioned in said agreement, notwithstanding such detention, reservoiring and storage by said other parties, should amount to three thousand (3000) cubic feet per second during the months of April, May, June, July and August, and fifteen hundred (1500) cubic feet of water per second during the months of September, October, November, December, January, February and March.''

With respect to this issue the court found as follows:

''That it is true that plaintiff has entered into contracts with the Southern California Edison Company and its predecessors in interest wherein and whereby the said Companies are permitted to store water in mountain reservoirs on the San Joaquin River, and tributaries of said river other than said North Fork; and that pursuant to said contracts said Companies have installed storage at Huntington Lake, Florence Lake and Shaver Lake, but no storage has been installed by said Companies on the North Fork of the San Joaquin River; and plaintiff has entered into no contracts with any power company, or other person other than the defendant, permitting storage of water on said North Fork. That the contract between plaintiff and the predecessors in

interest of the Southern California Edison Company permitting storage at Huntington Lake is referred to in said contract of June 14, 1909, between plaintiff, intervener Chowchilla Farms, Inc., and the predecessor in interest of defendant; and it is expressly provided that the limitations of storage provided for in said contract of June 14, 1909, shall be binding upon the parties to said contract, irrespective of any storage made in Huntington Lake. That it was further provided in said contract of June 14, 1909, that plaintiff and intervener Chowchilla Farms, Inc., reserved the right to enter into contracts for storage on the San Joaquin River other than Huntington Lake storage, and that the rights of the defendant's predecessor in interest to store on the North Fork should be governed by the flow of the San Joaquin River, irrespective of the amount of such other storage carried on on the main San Joaquin River, or the tributaries thereof other than the North Fork.

"That the contracts entered into with said Power Companies other than defendant's predecessor in interest, provide for the same limitations of storage as is provided for in said agreement of June 14, 1909, that is to say, fifteen hundred (1500) cubic second feet limitation during September, October, November, December, January, February and March of each year, and three thousand (3000) cubic second feet limitation during April, May, June, July and August of each year; and said limitations are incorporated in and are a part of each of said contracts permitting storage at said Huntington Lake, Florence Lake and Shaver Lake, and said Southern California Edison Company, the present owner of said reservoirs, is not permitted to store any water in said reservoirs when there is flowing in the San Joaquin River at Whitehouse Gauging Station less than fifteen hundred (1500) cubic second feet of water during the months of September, October, November, December, January, February and March of each year, and is not permitted to store any water in said reservoirs when there is flowing in said river at Whitehouse Gauging Station less than three thousand (3000) cubic second feet of water during April, May, June, July and August of each year."

The court thus found that the respondents had permitted storage of waters by others on the main river and its tributaries above the North Fork but made no finding on this

issue as to whether such upper storage had so lessened the flow of the river at the points of measurement provided for in the contract of June 14, 1909, as to interfere with the appellant's right to store water, and as to whether such other storage should be taken into account in ascertaining the stages of the river at which the appellant was entitled to store water under the terms of the contract. In effect, the court held that any storage by others on the upper river, with the consent of the respondents, was immaterial, it being held that the contract permitted the respondents to consent to any amount of storage by others on any part of the upper river without affecting the fixed limits named in the contract below which the appellant should have no right to store waters in any reservoirs it might construct on the North Fork.

If the interpretation thus placed by the court on the provisions of the contract of June 14, 1909, is correct, a finding on this issue was unnecessary since any storage that the respondents might permit on the upper river would be immaterial if the contract provided that they might consent to such storage, and that the same should not be considered in determining the stage of the river at or above which the appellant would be permitted to store water on the North Fork.

The provisions of the contract of June 14, 1909, which affect this issue, are as follows:

"In the event water is taken out of said river or diverted therefrom or withheld therein or therefrom below the point where water is returned to said river by the party of the second part, and above such point of measurement on the San Joaquin River aforesaid, then the party of the second part shall in similar manner, measure such water so taken out or withheld, and the same shall be considered a part of the flow of said stream.

"But this shall not be construed as referring to the reservoiring of water, or withholding the same from any of the tributaries of said San Joaquin River by the parties of the first part, or by any person acting through or under them, or with their consent, *as provided for in this agreement.*

"It is the understanding and agreement between the parties hereto that the said parties of the first part, Miller & Lux, Incorporated, and the Las Animas and San Joaquin

Land Company, have heretofore entered into an agreement with John S. Eastwood and others with respect to the reservoiring of certain waters of said San Joaquin River on Big Creek, a tributary of said river, and it is the understanding and intention between the parties that the reservoiring and withholding of the waters of said San Joaquin River or of said tributary *under said agreement* shall not affect the rights of the parties hereto nor the stages of said river at which, nor the conditions or provisions hereof under which, the party of the second part may withhold and reservoir the waters of said North Fork of said San Joaquin River and its tributaries. And it is also mutually understood and agreed that nothing herein contained is intended to or shall prohibit or prevent the first parties, or others acting under them, or with their consent, from reservoiring or withholding the waters of the San Joaquin River, or any of its tributaries, at any place above the point of return of the waters of said river thereto by the second parties to this agreement, or upon any tributaries of said river, whether such tributaries flow into said river above or below such point of return of the waters of said river by the second parties, *as provided in said contracts;* and the measurement and flow of said river as in said contracts provided with respect to the stages thereof at which the second parties may reservoir its waters, shall control and govern whether or not the first parties, or others acting under them shall so withhold or reservoir *such* waters; but the first parties shall not withhold, authorize or consent to the withholding or reservoiring of any waters of said river, or its tributaries, that flow into and supply the reservoirs to be constructed by the second parties, or by them constructed under this agreement." (Italics ours.)

In support of the court's findings with respect to this matter, the respondents argue that the first part of the third paragraph quoted provides that any waters stored under the previous agreement with Eastwood and others shall not affect the stage of the river at which the appellant may begin to store, and that the remaining portion of that paragraph provides that the respondents have an unlimited right to permit any other and additional storage on the upper river, and that any such storage subsequently permitted shall not affect the stage of the river at which the

appellant is permitted to begin to store. While the language of the contract is not as clear as might be desired, this interpretation has the practical effect of eliminating the words "as provided in said contracts" from that portion of the paragraph relied upon as giving them the right to consent to unlimited storage on the upper reaches of the river. This seems to us an essential part of the contract which may not be thus eliminated. It is argued that the word "also" early in the second sentence of the paragraph connotes something additional to that which has just been referred to and indicates an intention to provide for something entirely different from a complete coverage and protection with respect to all rights of storage which had already been given under the Eastwood contracts. But the first sentence of this paragraph refers only to rights of storage given to Eastwood and others on Big Creek, one of the tributaries of the river, while the Eastwood contract, which is in evidence, discloses that it also gave rights to future storage on other tributaries which are in the region of Big Creek. It seems more reasonable that the provisions contained in the second sentence of the paragraph were intended to fully cover all storage, whether on the San Joaquin River or any of its tributaries, which might occur as a result of the contract previously entered into between the respondents and Eastwood and others. This is especially true since the reference to such future storage is expressly limited by the phrase "as provided in said contracts", and a further reference to future storage is again limited by the phrase "shall so withhold or reservoir such waters".

Taking up this part of the contract more in detail, the first paragraph provides that any water that may be diverted or stored between the appellant's works and the lower measuring station, or that may be withheld from that part of the river, shall be considered a part of the flow of the stream in determining the stages of the river at or above which the appellant shall be allowed to store on the North Fork. If this provision stood alone it would prevent any storage on the upper main river or its tributaries, without considering the same as a part of the flow at the point of measurement, since any such storage must necessarily withhold the water so stored from that lower portion of the river. The second paragraph then provides that the modi-

fication of the method of measurement, just referred to, shall not be construed as preventing the reservoiring of water on any tributaries of the San Joaquin River, which reservoiring is provided for in this agreement. Had the intention been to reserve to the respondents an unlimited right to consent to storage affecting the main river above the North Fork, regardless of the effect of such storage on the river at the point of measurement, the rather complicated provisions of the second and third paragraphs quoted would have been entirely unnecessary. In that event a simple reservation covering the right to consent, past and future, to storage on the upper river and its tributaries, would have been sufficient. The last clause of the second paragraph indicates a clear intent that the right to consent to other storage, to be reserved to the respondents, is not an unlimited right, but is one restricted and limited by the terms of this agreement. The only provisions of the contract purporting to set forth these limitations or to define the right so reserved is contained in the third paragraph. That paragraph refers to a right of storage on Big Creek, a tributary of the San Joaquin River, under an agreement previously entered into between the respondents and John S. Eastwood and others, and provides that any water stored under that agreement shall not affect the stages of the river at which the appellant is permitted to store waters of the North Fork. In the same paragraph it is then stated that nothing therein contained is intended to prevent the storage of waters of the San Joaquin River or any of its tributaries above a certain point "as provided in said contracts". That this clause was designed and intended to cover every possible situation that might later arise in connection with rights of storage already given, is again indicated by the phrase "as provided in said contracts". It may be here observed that the evidence shows that there were in fact two agreements with John S. Eastwood and others, both entered into on the same day in 1906 and both later transferred to the Southern California Edison Company. The words "as provided in said contracts" must refer to something outside of this agreement in which they appear, and the most reasonable explanation of their use is that they refer to the Eastwood contracts. This is especially true since they appear in the paragraph in which the rights

already given to Eastwood and others have just been referred to, and since the next following clause refers to *such* waters reservoired and *so* withheld. The remainder of the paragraph we are considering provides that the measurement and flow of the river, with respect to the stages at which the "second parties" may reservoir "its" waters, shall control and govern whether or not the respondents or others acting under them "shall so withhold or reservoir such waters", with the final provision that in any event there shall be no storage on any part of the river or its tributaries that flows into the reservoirs "to be constructed by the second parties" under the terms of this agreement. While this portion refers to "second parties", it seems clear from the reference to "its" waters and the reservoirs to be constructed under this agreement that such reference is to the appellant. While the words "as in said contracts provided" used in referring to the measurement and flow of the river are ambiguous, and perhaps were merely an error, whether the same were intended to refer to the contract in which they appear or to the prior contract with Eastwood, or to both, the provision that a fixed stage of the river shall be taken as the basis for the right to store on the North Fork, whether or not other storage is permitted, is again qualified and limited by the words "so" and "such", which can only refer to waters stored in accordance with limitations previously referred to. We take the third paragraph as intended to fully and completely cover all rights of storage that may have been previously consented to by the respondents under the contracts with Eastwood and others, which storage, under the terms of the second paragraph, is not to be considered as a part of the flow of the river in determining the stage at which the appellant may begin to store on the North Fork.

Any contract should be interpreted in the light of the circumstances under which it was entered into and in view of the objects sought to be accomplished. It appears from the entire contract that the respondents had vast areas of land under irrigation from the San Joaquin River and that they were interested in having water stored during periods of high flow in the river, to be later released during periods of low flow. Under the circumstances, the fixing of

the exact stages of the river at or above which the appellant should be permitted to store water was one of the most vital parts of this contract. It was not a matter that would be lightly passed over by either side to the agreement. In the first paragraph quoted in this connection it was fully agreed that any water diverted or stored or withheld from that part of the river between the appellant's works and the point of measurement near respondents' diversion should be taken as a part of the river for the purpose of determining whether the minimum flow permitted storage on the part of the appellant. No good reason appears why water taken out of that portion of the river should be considered in determining the stage at which the appellant might exercise its right of storage, and water withheld from that portion of the river through upper storage should not be considered. If unlimited amounts of water could be taken out of the upper reaches of the river, the flow at the point where appellant's rights were to be determined would not only be seriously affected but, as a practical matter, this might easily result in an almost total destruction of the rights of storage purportedly given to the appellant under this contract. The second and third paragraphs quoted should be considered in the light of that situation, and this furnishes an additional reason for believing that the intent of the contract is to provide for an exception made necessary by the fact that other rights of storage had already been consented to.

If the construction contended for by the respondents is correct, the contract may be virtually annulled by them at any time and an investment of some four million dollars by the appellant in reliance on the contract may be rendered practically worthless. The interpretation contended for not only involves rewriting the contract by omitting the important clause referred to but results in a contract so unreasonable that a court of equity should not be asked to enforce it. Whether or not the holding of this court on the former appeal, to the effect that the matter under consideration constituted a defense to the action, has become the law of the case, we are of the opinion that the findings with respect to this matter are neither supported by the evidence nor sufficient to support the judgment. As

indicated in the finding quoted, the respondents have entered into subsequent agreements permitting storage on the upper reaches of the San Joaquin River over and above that provided for in the Eastwood contract referred to. It appears from the evidence that other contracts have been entered into permitting additional storage in Huntington Lake, with other storage at Florence Lake and Shaver Lake, and that such storage has at times reduced the flow of the river at the point of measurement below the stages named in the contract at or above which the appellant was entitled to store. If such subsequently permitted storage should be taken into consideration in determining the flow of the river at the point of measurement provided, the evidence does not sustain the findings to the effect that the appellant has stored water on the North Fork in violation of the terms of its contract.

While the court found that the appellant had threatened to continue to violate the contract under which it was given the right to store water on the North Fork, this finding must be taken in connection with other findings to the effect that the contract fixed a certain limit as to the flow of the river at the measuring point, below which the appellant would not be permitted to store, without taking into consideration any storage on the upper portions of the river which had been subsequently permitted. The findings, taken together, do not justify the conclusion that the court found that the appellant had threatened to violate the provisions of the contract, regardless of its true meaning. The finding as to irreparable loss is predicated upon the taking of any water from the river when the flow therein at the measuring points is under 1500 feet and 3,000 feet, respectively, regardless of any subsequent storage on the upper river, and the judgment is for an injunction preventing the appellant from taking water from the North Fork and the flow in the river at the measuring point is less than a fixed amount during the respective seasons of the year. As we view the contract, the evidence and findings are insufficient to sustain the judgment.

Under our view of the meaning of the contract of June 14, 1909, it is unnecessary to consider the other points raised,

which relate to the situation that exists if, in fact, the appellant has violated the terms of the agreement.

For the reasons given, the judgment is reversed.

Marks, J., and Jennings, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 21, 1934, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 30, 1934.

Spence, J., *pro tem.*, dissented.

Preston, J., and Langdon, J., deeming themselves disqualified, did not participate in the proceeding on hearing.